PHILIP KAES, Respondent, *v.* MISSOURI PACIFIC RAILWAY
COMPANY, Appellant.

January 7, 1879.

1. In Missouri there can be no such thing as a trespass by cattle upon unenclosed lands.

2. Where cattle are killed by a locomotive on a railroad running along unenclosed lands, but not at a railroad-crossing, the fact that the cattle got upon the track from land adjoining that of the owner of the cattle, and upon which they had strayed, is no defence to an action for damages against the railroad.

3. The statutory provision for double damages in such cases of injury to stock on a railroad is not unconstitutional; it is a police regulation, for the benefit of the travelling public.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

T. J. PORTIS and E. A. ANDREWS, for appellant: There must be direct or actual collision, and the injury must result from such actual contact, to make the railroad responsible for the penalty provided for in sect. 43.—*Lafferty* v. *Railroad Co.*, 44 Mo. 291; *Railroad Co.* v. *Haskett*, 10 Ind. 409. It must be shown that the animals came upon the railroad land from off the plaintiff's adjoining land at a point required by said section to be fenced, and where it was not so fenced. — *Ricketts* v. *Railroad Co.*, 12 Eng. Law & Eq. 520; *Jackson* v. *Railroad Co.*, 25 Vt. 150; *Brooks* v. *Railroad Co.*, 13 Barb. 593. It must be affirmatively shown that the animals came upon defendant's track without any carelessness or negligence on the part of the plaintiff contributing thereto. — *Keech* v. *Railroad Co.*, 17 Md. 32; *Railroad Co.* v. *Methaven*, 21 Ohio St. 586; *Jones* v. *Railroad Co.*, 42 Wis. 306; *Pitzner* v. *Shimmick*, 39 Wis. 129; *Fletcher* v. *Railroad Co.*, 64 Mo. 484. The double-damage stock-law is unconstitutional. — *Railroad Co.* v. *Austin*, 21 Mich. 408; *Seymour* v. *McCormick*, 16

How. 480; *Railroad Co.* v. *Baty*, Cent. L. J. 148, February 22, 1878.

WOOD & WHITNEY, for respondent: It is not negligence, in this State, to permit animals to run at large, or in unenclosed fields; and when such animals stray into unenclosed fields they are not trespassers. — *Gorman* v. *Railroad Co.*, 26 Mo. 445; *McPheeters* v. *Railroad Co.*, 45 Mo. 22; *Clark* v. *Railroad Co.*, 36 Mo. 220; *Tarwater* v. *Railroad Co.*, 42 Mo. 193; *Mumpower* v. *Railroad Co.*, 59 Mo. 245; *Berry* v. *Railroad Co.*, 65 Mo. 172. Proof of negligence on the part of the defendant was not necessary. — *Cary* v. *Railroad Co.*, 60 Mo. 213, and cases cited; *Hall* v. *Railroad Co.*, 59 Mo. 113. When it is shown that the cattle were killed at a point on the road where it was the duty of the road to fence, a *primâ facie* case is made. — *Walther* v. *Railroad Co.*, 55 Mo. 271; *Fickle* v. *Railroad Co.*, 54 Mo. 220; *Lantz* v. *Railroad Co.*, 54 Mo. 228. The act requiring railroad fences is constitutional. — *Trice* v. *Railroad Co.*, 49 Mo. 438. And is valid as to the Pacific Railroad Company, through which company defendant claims exemption from the requirements of the act. — *Gorman* v. *Railroad Co.*, 26 Mo. 441.

LEWIS, P. J., delivered the opinion of the court.

This suit was commenced before a justice of the peace on account of the killing of three mules of the plaintiff, valued at $600, on December 24, 1876, by the locomotive and cars of the defendant, " at a point on the track of defendant's railroad where the same passes along and adjoining unenclosed lands, and not at a private or public crossing of said road." The plaintiff was successful before the justice, and, on defendant's appeal to the Circuit Court, again recovered, by the verdict of a jury for $600; which sum was doubled in the amount of the judgment.

The testimony tended to show that the plaintiff owned enclosed lands on the north and south sides of the railroad,

and that adjoining his land on the east was an unenclosed tract which belonged to an association known as the Park of Fruits. There was a division-fence between the plaintiff's land and that of the Park of Fruits, which had been suffered to get out of repair. The railroad-fence along the plaintiff's field was not a lawful fence as required by the statute, nor was that along the unenclosed land of the Park of Fruits. The testimony left it uncertain whether the mules had got upon the track from the plaintiff's field where he was keeping them, or had passed out upon the unenclosed land and thence gone upon the railroad where they were killed. The defendant asked for a series of instructions whose leading ideas are embodied in the two following : —

"If the jury believe from the evidence that the mules of plaintiff entered on the track of defendant, not from plaintiff's land, but from the land of another, and that said mules were not lawfully on said lands, they will find for the defendant.

"The court instructs the jury that if they believe from the evidence in this case that the mules in question strayed from the plaintiff's own land or enclosure by reason of his own fence being down, and having been left down by him some months previously thereto, after he knew it was in that condition, on to the land of another, without that other's consent, then the mules were trespassers on that other's land ; and that if while so trespassing they strayed or passed from said land on to the railroad and were killed, plaintiff cannot recover, and they must find for defendant."

The court refused these instructions, and hereupon arises the principal question for our determination : Does the statutory liability for insufficient fencing arise in favor of one not the owner or proprietor of the unenclosed land adjoining the railroad at the place where the animals killed had found access to the track?

The act of February 18, 1875, provides as follows:

"Every railroad corporation   *   *   *   shall erect and maintain lawful fences on the sides of the road where the same passes through, along, or adjoining enclosed or cultivated fields or unenclosed lands, with openings or gates therein,   *   *   *   at all necessary farm-crossings of the road, for the use of the proprietors or owners of the lands adjoining such railroad, and also to construct and maintain cattle-guards where fences are required;   *   *   *   and until fences, opening-gates, and farm-crossings, and cattle-guards, as aforesaid, shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done, by its agents, engines, or cars, to horses, cattle, mules, or other animals on said road, or by reason of any horses, cattle, mules, or other animals escaping from or coming upon said lands, fields, or enclosures, occasioned in either case by the failure to construct or maintain such fences or cattle-guards." It is contended for the defendant that, so far as this law operates for the benefit of private persons, it applies to none but the adjoining land-owners; and that if, consequently, the plaintiff was not an adjoining owner at the place where, because of the defendant's failure to maintain a lawful fence, his mules were killed, he can claim no benefit of the statute, and the defendant ought to recover.

We do not perceive how a fair grammatical construction of the statute limits the purposes of the fence to the use of the adjoining land-owner. To erect and maintain the fence is first imposed on the corporation as a general duty. This is primarily a police regulation for the safety of the travelling public. The benefit, if any, to the land-holder is merely incidental. The fence being thus erected under a general requirement, it is next commanded, for the use of the proprietors or owners of the lands adjoining such railroad, that there shall be "openings and gates therein   *   *   *   at all necessary farm-crossings." There is a clear, logical connection between the "openings and gates

at farm-crossings" and the "use of the proprietors or owners of the land adjoining." But to suppose the Legislature saying that the fence also is to be erected "for the use of the proprietors," etc., is utterly to obscure and cast aside the great and leading purposes of that requirement as a police regulation. There is nothing in the usages of our language to sanction such an interpretation of the words as we find them placed among the sentences in this law.

We are referred to several decisions of high authority upon statutes elsewhere which require railroad corporations to fence their tracks. In considering those decisions it must not be forgotten that they were made with reference to a state of the general law concerning enclosures precisely the reverse of that which prevails in Missouri. By the common law, a land-owner was not required to build or maintain a fence of any particular description. All were required to keep their stock, by whatever means they chose, upon their own premises. It resulted that cattle found upon the land of one not their owner, without his consent, were trespassers, even though there was no enclosure of any sort for them to break through. Hence it might well be said that a statute requiring the railroad companies to fence was for the especial benefit of the land-owners, as it enabled them to perform the duty of keeping their stock within their own premises. It resulted further that as cattle upon the land of one not their owner were trespassers, therefore if they got upon the railroad from such land and were killed their owner could have no action, because the damage resulted directly from his own default. But in Missouri all these conditions fail. No law requires a man to keep his stock upon his own premises. In *Gorman* v. *Railroad Company*, 26 Mo. 441, our Supreme Court said: "It has always been the understanding as to the law in this State that our statute concerning enclosures entirely abrogated that principle of the common law which exempted the proprietor of land from the obligation of fencing it and

imposed on the owner of animals the duty of confining them to his own premises.   *   *   *   As early as October 28, 1808, the act for regulating enclosures became a law; and from that time the people have rested in the belief that they incurred no responsibility and were not guilty of any fault or negligence towards others by turning loose their cattle, unless when their cattle trespassed upon fields enclosed in the manner prescribed by law.   An injury to cattle, unless trespassing on fields legally enclosed, was redressed without any inquiry whether the cattle when they received the injury, were on the land of the owner or that of the individual committing the wrong." This doctrine has been steadily adhered to in a number of later decisions by the same court.   It follows that no such thing is known to the law in this  State as a trespass  by cattle upon unenclosed lands.

In *Ricketts* v. *Railroad Company*, 12 Eng. Law & Eq. 520, "the plaintiff's sheep, trespassing on A.'s close, strayed upon the defendants' railway, which adjoined, through a defect of fences which the defendants were bound as against A. to make and maintain, and were killed." It was held that the plaintiff could not recover, either at common law or under the statute.   8 & 9 Vict., c. 20, sect. 68.   The statute required railway companies to fence between their tracks and the adjoining lands, expressly for " protecting such lands from trespass, and the cattle of the owners and occupiers thereof from straying thereout," etc.   The decision was distinctly based on the fact that the sheep were trespassers on the land from which they reached the track.

In *Jackson* v. *Railroad Company*, 25 Vt. 150, a similar conclusion was reached in construing a statute which required the company to build and maintain "a sufficient fence upon each side of the road, through the whole route thereof." This, in view of the existing general law by which cattle coming upon the land of one not their owner would be trespassers, was held to be a provision for the benefit ex-

clusively of the proprietors of adjoining fields, and for the protection of cattle *rightfully* in such fields. The plaintiff failed to recover, because his cattle were trespassers at the place where they were killed.

In *Brooks* v. *Railroad Company*, 13 Barb. 594, it was held that "where the cattle of a stranger are on the lands of another, adjoining a railroad, and from these lands they pass on to the railroad, through a gate left open by the proprietor of such lands, and are killed by the engine, their owner cannot recover their value," etc. This case was decided upon the principles already explained. Said Shankland, J. : "I am also of opinion that the cattle of a stranger which are on the premises of the adjoining proprietor, *without right*, are not within the protection of this clause of the statute. * * * It has frequently been held, under the old statute in relation to division-fences, that one who was bound to maintain a division-fence was only thus bound as to cattle which were rightfully on the adjoining close, and not as to cattle wrongfully there. I think the statute in question should receive the same construction."

It is easy to see how little application these decisions have as authority for the case before us. If the plaintiff's mules were on the unenclosed land of the Park of Fruits, they were rightfully there under Missouri law. That they got there through the plaintiff's broken fence can make no difference. He was not bound to keep them confined in his own field. The statutory duty of fencing through unenclosed lands, if it affords protection to any animals upon them, protects equally all that may rightfully be there. There was therefore no error in the refusal of the instructions asked for by defendant on the point under consideration.

The case of *Berry* v. *Railroad Company*, 65 Mo. 172, strongly illustrates the doctrine here maintained. That case turned upon the statute as it stood before the amendatory act of February 18, 1875, when fencing was not required

through unenclosed lands, unless they were prairie lands. The plaintiff's ox had gotten into the enclosed field of a person not its owner, and thence upon the railroad, where it was killed. In a very clear and satisfactory opinion, Henry, J., demonstrates that the fence around the field, if a lawful one, was all the protection the plaintiff had a right to claim as to his stock, whether the fence along the railroad was a lawful one or not. He quotes from the New York and Vermont cases above referred to, which had a direct application in that case on account of the fact that, unlike the present case, it involved a possible trespass by the plaintiff's ox in the enclosed field of a stranger. He concludes that the court below erred in excluding testimony offered to show the condition of the fence around the field. Such an inquiry could of course have no materiality unless to determine whether the plaintiff's animal was a trespasser or not. If the fence was a lawful one, then the ox was a trespasser, and its owner could not recover notwithstanding any failure of the company to fence the sides of its road. If the fence was not lawful, the field was in effect unenclosed. The animal, in that case, was not a trespasser, and the plaintiff could recover.

Counsel for defendant favor us with an able argument against the constitutionality of the provision for double damages in case of a recovery by the plaintiff. According to our understanding, that question has long been settled in this State by our highest judicial authority. In numerous decisions the whole statute has been treated by our Supreme Court as primarily a police regulation for the protection of the travelling public. In *Trice* v. *Railroad Company*, 49 Mo. 438, it was objected that the Legislature had no power to compel the defendant to fence the plaintiff's crops ; that this was merely subjecting the defendant to an expense for the private benefit of an adjoining proprietor. Said Bliss, J. : " While the protection of the property of adjacent proprietors is an incidental object of the statute, its main and

leading one is the protection of the travelling public. To insure such protection, railroads are imperatively required to fence their track, and the penal liability deemed necessary to enforce this requirement is a matter of legislative discretion. A fine might be imposed, or a liability might be created for stock killed or for crops destroyed, either for their value or for more than their value, if the destruction should be caused by a non-compliance with the requirement." This, it seems to us, is a conclusive answer to every argument against the constitutionality of an enactment which imposes on the delinquent a liability in damages greater than the amount of damages actually sustained by the party suing. The constitutional provision (Art. I., sect. 8) whereby "the clear proceeds of all penalties and forfeitures" are directed to go into the public-school fund evidently applies only to penalties and forfeitures actually collected by the public county authorities.

We have examined all the other points presented for the defendant, but find nothing in them to warrant a reversal. With the concurrence of the other judges, the judgment is affirmed.