DARIUS HEALD, Appellant, v. MONROE GRIER, Respondent.

November 14, 1882.

1. Trespass by cattle on unenclosed lands is unknown in Missouri.
2. The owner of land may drive cattle therefrom, but in doing so must inflict no unnecessary injury on them.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Reversed and remanded.*

W. A. ALEXANDER, for the appellant: Owners of cattle are not required to keep them within an enclosure. — *Kurtz v. Dolde,* 7 Mo. App. 564. ''.In Missouri there is no such thing as cattle trespassing on unenclosed lands.'' — *Kaes v. Railroad* Co., 6 Mo. App. 397.

T. F. McDEARMON, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

Cuivre River empties into a slough of the Mississippi River at the northern extremity of a long peninsula whose sides are formed by the two waters, — the slough on the

east, and the Cuivre on the west. The land, about five hundred acres, extending from the confluence of the waters southwardly, to the neck of the peninsula, and almost to its junction with the main land, so to speak, was owned by the plaintiff. The land within the neck of the peninsula, with a considerable body of the main land adjoining, was in possession of the defendant, as a lessee. All the land within the peninsula, neck included, was wild pasture land, with the exception of a small cultivated enclosure belonging to the plaintiff. A fence, chiefly on the defendant's land, extended across from water to water, a short distance south of the connection of the peninsula with the main land ; but north of this, there was no fencing other than that of the small enclosure mentioned ; so that the lands of plaintiff and defendant formed one continuous stretch of open pasture, having no division fence between the several ownerships. At the western extremity of the cross-fence, which at that point was on the land of a third party, there was at times a gap between the fence and the river ; but anyone passing through this gap, and proceeding to the plaintiff's land, would necessarily pass over a part of the defendant's possession. In the spring of 1879, the plaintiff drove twenty-seven head of his cattle through the gap above mentioned, and established them on his peninsula pasture, instructing his tenant to watch, and not permit them to stray upon the defendant's pasture grounds. A few days afterwards, the cattle were found by the defendant on his grounds at the southeastern extremity of the pasture, whereupon he turned them out through the cross-fence and upon the farm of Peter Cornoyer, adjoining on the south. Cornoyer drove them back, and was about to turn them into the pasture whence they had come, when the defendant prevented him. Cornoyer then put them through his own fence, and upon the public road. The testimony tended to show that some of the cattle were consequently

lost to the plaintiff, and that he was put to much trouble, expense, and loss of time in recovering the remainder. Plaintiff sues for damages in the sum of $225. There was a verdict and judgment for the defendant.

The case appears to have been tried on a theory that, unless the pasture, with the defendant's consent, was used in common by the plaintiff and the defendant, without regard to division lines, — in other words, if there was no express agreement or special permission of the defendant, — the plaintiff's cattle, when found upon the defendant's land, were trespassers, and the defendant might lawfully turn them into the highway or elsewhere at any risk of a loss by the owner, of his property. This was a mistake which is fatal to the judgment. The cattle were not trespassers, if there is any force in repeated Missouri decisions on that subject. It has been declared again and again, that the fencing laws of our Western states reverse the common-law rules in that connection. *Gorman* v. *Railroad Co.*, 26 Mo. 445; *Hertz* v. *Dolde*, 7 Mo. App. 564; *Kaes* v. *Railroad Co.*, 6 Mo. App. 397.

The Missouri land-owner who would keep roving animals from straying upon his possessions must fence them out with a lawful fence. Failing in this, he can find no law which requires the animals to respect his invisible boundary lines. The cattle, in this instance, when grazing upon the land of their owner, were rightfully there, as between that land and the defendant's, and consequently, as between the parties to this suit, the defendant's land was unenclosed. In *Kaes* v. *Missouri Pacific Railroad Company* (*supra*), this court followed the rulings of our supreme court to the conclusion, from which there is no escape, that "no such thing is known to the law, in this state, as a trespass by cattle upon unenclosed lands." The defendant had a right to build a division fence between his land and the plaintiff's. Instead of doing this, he

invited the entry of the plaintiff's cattle, by leaving the way open for them. He had an unquestionable right to drive them back upon the plaintiff's land if there was no agreement to the contrary. But this is not because the animals were trespassers, in any sense. It is because of the right incident to all' ownership, that the owner may choose to what uses his property shall be put. In enforcing this right, however, he must so exercise it, as not to inflict unnecessary injury on another. A man may lawfully refuse his neighbor a drink of water. But it does not follow that he may treat the asking for it as a trespass and respond with an assault. Suppose the defendant's cattle had strayed into the plaintiff's *cul de sac* enclosed by the rivers. Would any code of law or morals have justified the plaintiff in forcing them into the river to be drowned? So far as legal rights are concerned, it is wholly immaterial whether the owner lose his stock by drowning, or by a wilful and unauthorized exposure of them to the perils of the highway. The case is not in the least altered by the plaintiff's trespass, if there was one, in driving his cattle across the defendant's land, in order to get them upon his own. That act had no logical connection with the later events. When the animals were once upon their owner's land their occupancy was lawful, and so remained.

All the judges concurring, the judgment is reversed and the cause remanded.