WOODS, Respondent, v. CARTY, Appellant.

**St. Louis Court of Appeals, February 7, 1905.**

FENCES: Injuring Animals: Negligence.    Under sections 3294 and 3298, Revised Statutes of 1899, if the proprietor of any field fails to inclose it by a fence filling the requirements of section 3295, and animals running upon the common range enter his field on account of his failure to maintain a lawful fence, and if he kills or injures said animals by worrying with dogs or otherwise, he is liable to the owner of such animals in double the damages inflicted, irrespective of whether he was careful or negligent, humane or malicious, in driving such animals out of his field.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Wm. P. Elmer* for appellant.

(1) The common law does not require landowners to fence against cattle to recover for trespassing, but in Missouri no action can be maintained for trespass without a lawful fence. Heald v. Grier, 12 Mo. App. 556; 12 Am. & Eng. Ency. Law (2 Ed.), 1039. (2) No obligation rests upon a landowner to fence his lands or to even maintain a lawful fence, before he can drive off animals on his close. All these statutes do is to

deprive him of any remedy for damages done by tres-
pass. Hughes v. Railroad, 66 Mo. 326. (3) And in
driving same from his lands he may use any ordinary
means to which a prudent man would naturally resort
to, using reasonable care not to inflict injury. 12 Am.
& Eng. Ency. Law (2 Ed.), 1045, 1046.

*A. E. McGlashan* for respondent.

(1) In Missouri there is no such thing as tres-
pass by stock upon lands, not inclosed with a lawful
fence. Kaes v. Railroad, 6 Mo. App. 397; Heald v.
Grier, 12 Mo. App. 556. (2) Under our statute con-
cerning "Fences and Inclosures," the common law
principles are abrogated. Swine can run at large on
the range in Dent county and landowners are required
to fence to keep swine out and not the owners of swine
required to fence to keep them in. Gorman v. Rail-
road, 26 Mo. 441; O'Riley v. Diss, 41 Mo. App. 184;
Bradford v. Floyd, 80 Mo. 207. (3) Sections 3294,
3295 and 3298, come within the police power of the
State the same as section 1105. The same interpreta-
tion and construction given section 1105 is applicable
to section 3298. (4) The above section of stat-
ute impose on the farmers, as well as railroads, the
obligation to inclose their fields with a lawful fence,
defines a lawful fence and imposes as a penalty for
failure to erect and maintain a lawful fence, double
damage upon any person injuring any animal that may
break into his inclosures because of his unlawful fence.
Kelley's Justice Practice, sec. 540. (5) Injury to
stock, unless trespassing on fields legally fenced, is re-
dressed without any inquiry as to whether the stock,
when they received the injury, were on the lands of the
owner or that of the individual committing the wrong.
Gorman v. Railroad, 26 Mo. 446. (6) To enable a per-
son to justify, under the act concerning fences and in-

closures, for killing his neighbor's stock, he must bring himself exactly within the protection of the statute by proving a lawful fence. Early v. Fleming, 16 Mo. 154.

STATEMENT.

The suit was commenced before a justice of the peace by filing the following complaint:

"Now comes the plaintiff and for cause of action states that, on or about the ninth day of August, 1902, he was the owner of four hogs, to-wit, four sow shoats or gilts, of the weight of about one hundred and fifty pounds and about one year old, and that on or about the ninth day of August, 1902, said hogs while running at large on the range got into John Carty's field or farm because of the want of sufficient and lawful fences around his field and farm and that on the day said hogs got into his field and farm aforesaid the defendant did unlawfully hurt, wound and kill said hogs or cause the same to be done, by running and worrying said hogs with a dog and men and by beating, hitting and rocking said hogs and by throwing them over the fence and otherwise ill-treating them, causing injuries and overheat from which all four of said hogs died, wherefore plaintiff was injured and damaged in double the value of said hogs. Plaintiff states that the value of said hogs was forty-five dollars and therefore plaintiff, in accordance with section 3298 of the Missouri R. S. of 1899, upon which section this action is founded, asks judgment for double damages, to-wit, for ninety dollars, together with costs of suit."

The cause was appealed to the circuit court where on a trial *de novo* plaintiff recovered a verdict for forty dollars which was doubled by the court and judgment rendered accordingly. Defendant appealed.

Plaintiff introduced his evidence to sustain the allegations of the statement and rested. The defendant introduced evidence to disprove same, and also in-

troduced evidence tending to prove that he caught the hogs in suit and put them out of his field with a man and dogs and in so doing he used such care as an ordinarily prudent and careful man 'would use under like circumstances, and that there was nothing in the size, character, habit or viciousness of the dog or the mode of setting him on or using him, showing lack of the exercise of ordinary care or prudence.

The court instructed the jury as follows for plaintiff.

"1. The court instructs the jury that this is an action under section 3298 of the general statutes, which provides that if a person does not have a lawful fence and on account of such fact hogs enter into his field and injure him in any way and he worries them with dogs or otherwise and by such worrying, they are killed or injured such person shall be liable to the owner of said hogs in double damages with costs. A lawful fence, if composed of posts, boards or palisades, shall be four and one-half feet high with posts set firmly in the ground and not more than eight feet apart and with rails, paling, boards or palisades securely fastened thereto and placed at proper distances apart so as to resist horses, cattle, swine and like stock; a worm fence shall be at least five feet high to the top of the rider or if not ridered shall be five feet to the top rail or pole and shall be locked with strong rails, poles or stakes. In this case, however, the fact that the fence was not of a height required by law will not make the defendant liable in this action unless you believe from the evidence that the hogs entered the field by going over the fence; that is to say, no defect of any kind in the fence would fix the liability on the defendant unless you believe from the evidence that such defect was the place where the hogs entered the field. If the defect through which, or by which, the hogs entered the defendant's field was caused by the action of the water or any other agency not under the control of the defendant,

then he would have a reasonable time, after such defect was so caused, within which to repair the same and during such time would not be liable for damages to stock under above section.

"2. A reasonable time within which to so repair is such time as a reasonably prudent man would take to repair a fence in like condition and under like circumstances. If the hogs entered the defendant's field at a hole or defect in the fence, of which he had no knowledge and which did not exist when the fence was built, then he would not be liable in this action unless such defect had existed for a sufficient time that a reasonably prudent man would have ascertained the same. The plaintiff is not required to prove the manner and place of entrance of the hogs into said field by positive testimony, but he may prove it by circumstances, provided the proof of the circumstances relied upon to establish the facts are sufficiently strong to satisfy you of the fact sought to be established.

"3. If, therefore, you find from the evidence that defendant's fence around the field in question was not a lawful fence as herein defined and if plaintiff's hogs entered defendant's field by or through any defect in such fence which prevented it from being a lawful fence and if defendant worried them with dogs or caused it to be done or beat them, and if such worrying or beating killed or injured and caused death of such hogs or any of them, you should find for the plaintiff and also find the value of same hogs so killed, at the same time or injured so they died therefrom soon afterward. Provided, however, if you find that the hogs entered said field at a place where the defect was not in the fence when first built and was caused by some agency not under the control of the defendant and he had not had a reasonable time after such defect was caused to repair the same then you find for the defendant, or if they entered by such defect in the fence which was unknown to the defendant and if it had not

existed for such a length of time that a reasonably prudent man would have discovered the same, then the issues should be found for the defendant."

The court refused the following instructions asked by defendant:

"2. The court instructs the jury that although you may find that the fences around the farm of the defendant were not lawful fences and that by reason thereof the hogs in question got into defendant's farm and that defendant at the time and place alleged in the complaint dogged said hogs and caught and put them out of his field, and thereby caused the death of said hogs, yet defendant is not liable unless it is further proven by the plaintiff, that in dogging, catching and putting said hogs out of said field that defendant was guilty of negligence and resorted to such means as an ordinarily prudent man would not use under the same conditions, and the question as to whether the defendant was guilty of negligence would have to be proven by testimony, other than the mere death of said hogs.

"3. The court instructs the jury that the defendant had the right to put said hogs out of his field and to use all reasonable and ordinary means such as a prudent man would resort to in order to accomplish that end. And it is permissible to use a dog to catch or run said hogs out of the field unless there was something in the size, character, habits and viciousness of the dog or mode of setting him on, which shows lack of the exercise of ordinary care or prudence.

"4. A man is said to be exercising ordinary care within the meaning of the foregoing instructions, if he put said hogs out of his field in a way and manner that an ordinarily careful and prudent person in the same relation and under the same circumstances and conditions would have done.

"5. Defendant would not be guilty of negligence within the meaning of instruction numbered one unless he resorted to such means to get said hogs out of his

field that an ordinarily prudent man would not use under the same circumstances and conditions."

BLAND, P. J. (after stating the facts).—The only error discussed on the oral argument and in the briefs of counsel is the giving and refusing of instructions. Appellant's contention is, that notwithstanding his field was not inclosed by a lawful fence through or over which respondent's hogs entered, he had a right to drive them out and, if in doing so he used ordinary care not to injure them, he is not liable though he, in fact, killed, maimed and wounded them. Section 3294, chapter 28 (entitled "Fences and Inclosures"), Revised Statues 1899, provides: "All fields and inclosures shall be inclosed by hedge, or with a fence sufficiently close," etc. The next section describes what shall constitute a lawful fence. The two succeeding sections (3296, 3297) are in respect to the liability of owners of stock that enter the fields of another inclosed by a lawful fence. The next section is the one upon which the suit is predicated and reads as follows:

"If any person damnified for want of such sufficient hedge or fence, shall hurt, wound, lame, kill or destroy, or cause the same to be done by shooting, worrying with dogs, or otherwise, any of the animals in this chapter mentioned, such person shall satisfy the owner in double damages with costs." [Sec. 3298, R. S. 1899.]

It seems to me that, reading sections 3294 and 3298 together, the Legislature intended that the proprietor of any field or other land, from which he wished to exclude animals running on the common range, must inclose it by such a fence as is described by section 3295; that if the proprietor incloses any field by an unlawful fence (a fence not filling the requirements of the statute) and animals running upon the common range enter his field over or through such unlawful fence and do him damage, if he, in the language of the statute,

"shall hurt, wound, lame, kill or destroy or cause the same to be done by shooting, worrying with dogs, or otherwise," any of the animals mentioned, he shall be liable to the owner in double damages, and that this is so, irrespective of whether he was careful or negligent, humane or malicious in driving them out. Under the statute it was appellant's duty to inclose his field with a lawful fence to prevent animals running at large from getting into his field. By neglecting the performance of this duty, appellant was primarily guilty of negligence *per se* and it may be justly said that it was through his own neglect the respondent's hogs entered his field and damaged his crops. Under the circumstances, the hogs were not trespassers (Kaes v. Railway, 6 Mo. App. 397; Heald v. Grier, 12 Mo. App. 556) as the owner might permit them to run on the common range, and the appellant, if he would fence against them, was required to do so by a lawful fence. [Bradford v. Floyd, 80 Mo. l. c. 211.]

Appellant refers to Hughes v. Railroad, 66 Mo. 326, and Heald v. Grier, supra, as holding that the proprietor is under no legal obligation to inclose his land. This is so in the sense that the Legislature had not made the duty to fence an absolute one. But if the proprietor would protect himself from damage by animals running at large on the common range or look to the owner of such animals for reparation if his crops are damaged by them, he must, under the statute, show that his field was inclosed by a lawful fence. The converse of the proposition is equally true, to-wit, if a proprietor whose fields are not inclosed by a lawful fence would avoid liability for injuring such animals in driving them out of his fields, he must do them no injury.

I think the instructions given clearly and correctly state the law of the case and that those refused did not correctly state the law. It follows that the judgment should be affirmed and it is so ordered. All concur.