*Memorandum* Preble ... was not present at this term, nor at the following terms in *Somerset* and *Penobscot;* and on the eighteenth day of *June* resigned his office as one of the Justices of this Court.

---

## LITTLE *vs.* LATHROP.

Where there is no prescription, agreement, or assignment under the statute, whereby the owner of land is bound to maintain a fence, no occupant is obliged to fence again't an adjoining close ; but in such case, there being no fence, each ownei is bound at his peril to keep his cattle on his own close.

Where a tenant is bound by prescription, agreement or assignment under the statute, to maintain a fence against an adjoining close, it is only against such cattle as are *righ fully* on that close ;—and in such case, if the fence be not in fact made, the owner of either close, thus adjoining, may distrain the cattle escaping from the adjoining close, and not rightfully there.

The *Stat.* 1821, *ch.* 128, *sec.* 6, is merely in affirmance of the common law.

Whether to leave wild lands unfenced, be not an implied license for all cattle to traverse and browse them, *quære.*

THIS was an action of trespass *quare clausum fregit.* The defendant pleaded the general issue, which was joined. He pleaded secondly, in bar, that he owned two closes adjoining the plaintiff's

Little *v.* Lathrop.

close; that at the time of the alleged trespass the close of the plaintiff was uncultivated, and not fenced; that the defendant depastured his cattle on his own close, as he lawfully might; and that they escaped into the close of the plaintiff.

The plaintiff replied that his close was improved; that there was a dispute respecting the partition fence between the closes of the defendant and the plaintiff; and that no assignment had ever been made to either party of his portion of the fence to be maintained.

The defendant rejoined, traversing the fact that the close of the plaintiff was improved, and that there was a dispute respecting the partition fence. And issue was joined on the traverse.

At the trial before *Weston J.* the plaintiff proved his title to the *locus in quo*, and that the defendant's cattle had been depastured there, as alleged in the writ. Upon the second issue much testimony was offered, which the judge left to the jury; instructing them that if, from the evidence, they should be of opinion that the close in question was improved land, designed to be secured as such, although the fences and other obstructions might not at all times be adequate for that purpose, they ought to find for the plaintiff, on both issues : but that if they should be satisfied that the land was suffered to lie common, and was not intended to be improved or cultivated, they ought to find both issues for the defendant. They accordingly found for the defendant; and the question whether the facts pleaded by the defendant in his second plea constituted a good defence to the action, was reserved for the consideration of all the judges.

*Allen*, for the plaintiff, argued that the defendant was bound to keep his cattle on his own close ; unless he had availed himself of the provisions of the statute to compel the plaintiff to maintain his part of the fence, or proved him liable by agreement or prescription. He insisted that on this subject the doctrines of the common law were the law of this State ; and referred to *Rust v. Low & al.* 6. *Mass.* 90. *Stackpole v. Healy* 16. *Mass.* 23. *Heath v. Ricker* 2. *Greenl.* 72.

Little *v.* Lathrop.

R. Willi*ns*, for the defendant, contended, 1st, that the doctrines of the common law on this subject, requiring every man, at his peril, to keep his cattle on his own close, had never been adopted in this country. To prove which he argued from the provisions of the Colony laws, *ch.* 19, 78, and the Province laws, *ch.* 24, 51, 55, 220, 266, and *Stat.* 1785, *ch.* 52, 53. *Stat.* 1788, *ch.* 56, 65. *Stat.* 1799, *ch.* 61 *Stat.* 1804, *ch.* 44; and he insisted that these provisions, requi·ing every man to maintain his proportion of all fences on his own land, were inconsistent with the notion that the common law was still in force. It would seem to be useless to compel one to fence out his neighbor's cattle, if his neighbor himself was obliged to keep them out

2. So far as the cases cited on the other side may be understood as indicating that the laws of Massachusetts and this State agree with the common law, they are controlled by the subsequent statute of 1821, *ch.* 128; which may be considered as a revision of the whole law on this subject, and as furnishing all the remedy to be pursued for damages done by the cattle of another. And this statute, *sec.* 6, evidently regards cattle as being lawfully at large on commons and highways. The owing one's land open, may be considered as an implied license to all others, to depasture it with their cattle. A different construction would be too destructive to the interests of our new settlements, to be admitted for a moment.

3. But the defendant is not liable, even by the principles of the common law. The cattle of a stranger are not distrainable till they have been levant and couchant, which was not the case here. 3. *Bl. Com.* 8. If the owner could not distrain, neither can he have trespass. The defendant also may claim a right of common *pur cause de vicinage*; into which, though he may not put his beasts, yet if they escape, he is not responsible in damages. *Co. Lit.* 122. *a. note g. Bromfield v. Kirber* 11. *Mod.* 72. *Gullet v. Lopes* 13. *East* 348. *Tiringham's case* 4. *Co.* 38. *Sir Miles Corbett's case* 7. *Co.* 5. 3. *Dane's Abr.* 658.

The argument having been made at the last *June* term, and the cause continued for advisement, the opinion of the Court was now delivered by

MELLEN C. J.   The verdict has established the truth of the facts stated in the defendant's plea in bar ; viz. that at the time of the alleged trespass, the plaintiff's close was uncultivated and unfenced ; and that the defendant's cattle were lawfully depasturing on the adjoining close belonging to him, and thence escaped on to the plaintiff's close, and there consumed the grass, &c. which is the trespass complained of.   It does not appear that either of the parties was bound to make or maintain any part of a partition fence in virtue of prescription, agreement or assignment, pursuant to our statute of 1821, *ch.* 44, sec. 3.   The question is whether, on these facts, the present action is by law maintainable.   The important case of *Rust v. Low & al.* 6. *Mass.* 90, which has been cited in the argument, may be considered as containing all the legal principles and distinctions in relation to the subject before us ;—a subject respecting which much ancient learning exists; all of which was ably and laboriously investigated by the counsel, and then by the court, in the abovementioned case.   From a careful examination of it, the following principles, among others, appear to be recognized and established.

1.   At common law, the tenant of a close was not obliged to fence against an adjoining close, unless by force of prescription.

2.   At common law, when a man was obliged by prescription to fence his close, he was not obliged to fence against any cattle, but those which were rightfully in the adjoining close.

3.   At common law, a man though not bound to fence against an adjoining close, was still bound at his peril to keep his cattle on his own close, and prevent them from escaping.

4.   The legal obligations of the tenants of adjoining lands to make and maintain partition fences, where no prescription exists, and no written agreement has been made, rest on the statute.

5.   An assignment pursuant to the statute, imposes the same duty as would result from a prescription.

6.   Where there is no prescription or agreement, the provisions of

the statute oblige a tenant, liable to make the partition fence, or any part of it, to fence only as in the case of prescription at common law; that is, against such cattle as are rightfully on the adjoining land.

7. Every person may maintain trespass against the owner of cattle, unless such owner can protect himself by the provisions of the statute, or by a written agreement, or by prescription.

From the foregoing principles, as copied or extracted from the opinion of the court, in *Rust v. Low & al.,* it appears,

1. That where there is no prescription, agreement, or statute-assignment, no tenant is bound to fence against an adjoining close ; but in such case, there being no fence, each owner is bound at his peril, to keep his cattle on his own close.

2. When a tenant, for any of the reasons before stated, is bound to fence against an adjoining close, it is only against such cattle as are rightfully in that close ; and in such case, if the fence be not in fact made, the owner of either close, thus adjoining, may distrain the cattle escaping from the adjoining close, not rightfully there.

The court also decided in the above case that the third section of the statute of 1788, *ch.* 65, which is similar in all essentials to the sixth section of the statute of this State, *ch.* 128, and all its provisions, so far as they extended, were merely in affirmance of the common law. That cause was decided in 1809 ; and yet our legislature, who re-enacted the same section in 1821, only adding a clause as to another point, must have known that decision, and the construction given to the before mentioned section ; and this is one legislative sanction of it ; and the statute of 1825, *ch.* 317, recognizing the right of impounding beasts " for doing damage in the tillage, *mowing* or other lands of any person under improvement, whether inclosed with a legal and sufficient fence or not, provided such impounding be lawful according to the principles of the common law," is another sanction.

Many of the early statutes commented upon or referred to by the defendant's counsel, in his able argument, would have deserved and received from us a more particular consideration, as well as several of the cases which have been cited, had not the whole subject, as we

Little *v.* Lathrop.

have beforementioned, undergone so thorough an examination in the great leading case so often alluded to. Some of the principles he has discussed cannot be applicable here. The case of *Gullet v. Lopes* was a case of adjoining commons; and before the inclosure of the principal part of Axler common, the cattle belonging to the different owners, and depastured on them, had a right, by reason of vicinage, to pass from one common to the other; but such a principle, we apprehend is not admissible here; nor is such a species of common known here. Certainly, if the law is as we have before stated, such a doctrine can have no bearing upon a question like that under consideration between two individuals, each owning his own close in severalty.

It has been urged that the plaintiff's conduct, in leaving his land unfenced, amounts to an implied license; but a license must be pleaded; and if it had been, still it would not alter the case; as the only question submitted is, whether the facts, composing the plea in bar, constitute a good defence.

It is said by the plaintiff's counsel that it it is highly important, in point of principle, that this cause should be decided in favor of the plaintiff; for if not, the consequence will be that every man, owning lands uncultivated, must be exposed to injury by cattle destroying or wounding the young growth, or else be compelled to fence his land with a legal fence of statute height, at an unreasonable expense. And it is said by the counsel for the defendant, that if this action is sustained, it will arrest or at least impede the settlement of our wild lands, and be highly injurious to infant settlements, where cattle must from the necessity of the case, be permitted to range without fences. In either view of the subject there may be many inconveniences, and they are all particularly proper for legislative consideration; but the court has nothing to do but to ascertain, as correctly as it can, what the law of the case is, and then declare it.

It remains for us only to add that on legal principles, as we find them settled and sanctioned by high authority, the defence disclosed in the plea in bar, is not sufficient to defeat the action; and accordingly, pursuant to the agreement of the parties, the

*Verdict is set aside and a new trial granted.*