JOHN MACKLER *et al.*, Respondents, v. G. A. CRAMER, Appellant.

Kansas City Court of Appeals, December 10, 1888.

1. **Division Fences:** CONSTRUCTION OF SECTION 5656, REVISED STATUTES. Under the provisions of the statute as to division fences (R. S. secs. 5656, 5661) the adjoining owners may each build his half in the first instance, or build jointly, and in either case divide it for repairs and have a statutory fence. But an agreement between such owners for the erection of a division fence is not within the statute. [HALL, J., *dissents* as to the first paragraph.]

2. **Practice:** INSTRUCTION: WHEN IT IS ERROR TO REFUSE: CASE ADJUDGED. Where there was evidence tending to support the hypothesis put to the jury by an instruction (as was the case here) it was error in the trial court to refuse it.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

Statement of case by the court.

This case was begun before a justice of the peace to recover double damages under Revised Statutes, section 5661, for injuries to crops alleged to have been caused by defendant's failure and neglect to keep in repair his part of a division fence between his land and the land of plaintiffs. The statement or petition is as follows: "Plaintiffs for cause of action state that the defendant and the plaintiff John Mackler own adjoining farms, situated in Lamine township in Cooper county, Missouri; that said farms are divided by a division fence; that the north part of said division fence is owned and kept up by the plaintiff John Mackler; that the south portion of said division fence is owned by the defendant; that the plaintiffs are cultivating a crop of corn in partnership on said John Mackler's farm where the same is bounded by defendant's part of said division

fence ; that at the dates hereinafter mentioned and for a long time prior thereto the defendant did wrongfully neglect and refuse to keep his said part of said division fence in good repair as required by the provisions of the one hundred and fourth chapter of the Revised Statutes of the state of Missouri, of the revision of 1879 ; that by reason of the failure of the defendant as aforesaid to keep his part of said division fence in good repair according to the provisions of the statutes in such cases made and provided, divers horses, mules, cattle, hogs and other animals, on or about the twenty-fifth day of July, 1886, did enter upon the farm of the said John Mackler and did then and there eat up and destroy a large amount of corn hereinbefore mentioned growing thereon ; that said horses, mules, cattle, hogs and other animals came upon said Mackler's farm at said place where the defendant had as aforesaid neglected and refused to keep his part of said division fence in good repair; that the value of the corn so eaten up and destroyed was reasonably worth forty dollars ; that by reason of the premises the plaintiffs have been damaged in the sum of forty dollars, wherefore plaintiffs pray judgment for the sum of eighty dollars, double the amount of their damages as aforesaid, according to the provisions of the statutes in such cases made and provided, and for costs." The plaintiffs had judgment in the justice's court for ten dollars ; in the circuit court, the defendant having appealed to that court, the plaintiffs obtained judgment for eight. dollars. The defendant has appealed to this court.

*Cosgrove & Johnston*, for the appellant.

(1) For the appellant it is contended that he could only be held liable in this action for damages resulting to plaintiffs from his neglect or refusal to keep in good repair a part of a division fence owned by him, and not for his failure to build a fence, although he may have agreed to do so. The statute only contemplates the keeping in repair a fence which was in existence and not

the building of a new one. Laws of Mo. 1885, p. 168;
Webster's Dictionary, "Repair." Plaintiff to recover
under this statute must bring his case strictly within its
terms. *Parish v. Railroad*, 63 Mo. 284. The third
instruction asked by the defendant and refused by the
trial court should therefore have been given. The evi-
dence warranted it and no other instruction given by the
court on behalf of either party submitted this question
to the jury. (2) It will doubtless be argued that if
defendant agreed to build and maintain a fence to the
river and failed to do so, he is as much liable as for
his failure to keep in repair a fence already built. This,
however, we deny. The statute provides for a case of
this kind and allowed the plaintiff to build the fence
himself and charge half the expenses thereof to the
defendant. R. S. sec. 5656. Or if defendant agreed to
build this fence, as contended, but refused and neglected
to do so, then plaintiff had his remedy against him for a
breach of his contract, but not for double damages
under the statute as sued for. (3) The court erred in
giving the second instruction asked by the plaintiffs
against defendant's objection. The burden of making
their case devolved upon plaintiffs; and this instruction
simply shifts the burden upon defendant. It is mis-
leading and is, as are also the other instructions given
on behalf of plaintiffs, in conflict with the views here
contended for.

*D. W. Shackleford* and *Draffen & Williams*, for
the respondents.

(1) Under section 5656, the adjoining owner can
erect his part of the fence instead of paying the
builder for half of the one already erected. In that
case section 5659 would have no application. So it can-
not be that section 5661 is necessarily limited to such
fence as a justice can divide under section 5659.
(2) It ought not to be held, unless the statute is
susceptible of no other construction, that the parties
cannot waive the provisions of the sections in reference

to the building of division fences, and treat as a partition fence one jointly erected by them, but to bring themselves within the terms of section 5661, and also of section 5762, in reference to removal of partition fences, they must tear down the joint fence. · One of the parties must then rebuild (possibly at the same place and of the same material) the whole fence, and then the builder must sue the adjoining proprietor for his part of the value thereof. Parties in other cases may waive provisions of the statute of which they might otherwise avail themselves, and no good reason is perceived why they may not treat a fence jointly erected as a partition fence, within the statute, without requiring it to be torn down and rebuilt by one of them, and then a suit to be brought for half the value thereof, to bring it within the statutory provisions. *Moore v. White*, 45 Mo. 206. (3) "When the parties have gone to trial on issues clearly made by the instructions, and there is no claim of surprise, the appellate court will not look into the proper issues, if the petition will support the judgment." *Goodger v. Finn*, 10 Mo. App. 226. If there was a variance between the cause of action alleged, and the case that was tried, appellant is in no position to take advantage of it. *Bank v. Westlake*, 21 Mo. App. 565; *Hoyt v. Quinn*, 20 Mo. App. 72; *Clements v. Maloney*, 55 Mo. 352. Even if "there was a clear variance between the averments of the pleading and the proof, still, as both parties treated them as in conformity in the trial below, this court will so treat it here." *Bank v. Westlake, supra*. The parties tried the case upon the theory that the pleadings embraced the issue, as to whether there was any agreement between the parties as to the division of the fence. Evidence was offered and instructions asked with reference thereto. No objection of variance was raised. The complaint is sufficient to sustain the judgment. "The parties having gone to trial upon issues clearly made by the instructions, and there being no claim of surprise, this court

will not look into the proper issues, when the petition will support the verdict and judgment." *Goodger v. Finn, supra ; Railroad v. Lindsay*, 4 Wall. 650.

HALL, J.—The rights of the parties in this case depend upon the construction of section 5661, Revised Statutes. That section is as follows: " Every person owning a part of a division fence shall keep the same in good repair, according to the requirements of this chapter, and, upon neglect or refusal to do so, shall be liable in double damages to the party injured thereby." Sections 5651 to 5664, Revised Statutes, both inclusive, were first enacted in 1877, and appear in the original act in the same order as respectively sections 1 to 14. They are, so far as they relate to one another, to be construed together. By section 5651 it is provided that "all fields and inclosures shall be enclosed by hedge or with a fence." By section 5652 is prescribed what shall be deemed a sufficient hedge or fence. The other sections of the statute to which it is necessary to refer are as follows : " Sec. 5656 : Whenever the fence of any owner of real estate now erected or constructed, or which shall be hereafter erected or constructed, the same being a lawful fence, as defined by sections five thousand six hundred and fifty-one and five thousand six hundred and fifty-two, serves to inclose the land of another or which shall become a part of the fence inclosing the lands of another, on demand made by the person owning such fence, such other person shall pay the owner one-half the value of so much thereof as serves to inclose his land, and upon such payment shall own an undivided half of such fence, provided the person thus benefitted shall have the option to build, within eight months from date of such demand, a lawful fence half the distance along the line covered by the above-mentioned fence. The demand shall be made in writing and served on the party interested, his agent or attorney, or left with some member of the family over fourteen years of age, at the usual place of abode ; if the party notified fails to comply with the demand within the specified time, the

party making the demand may, at his option, proceed to enforce the collection of one-half the value of such fence, as in this chapter provided, or remove his fence without any other or further notice." Section 5657 provides for ascertaining "the value of one-half of such fence" if the parties shall fail to agree thereto. Section 5658 provides for the recovery of the said value of one-half of such fence. Section 5659 is as follows: "If the parties cannot agree as to the part each shall have and keep in repair, either of them may apply to a justice of the peace of the township, who shall forthwith summon three disinterested householders of the township to appear on the premises, giving three days notice to each of the parties of the time and place where said viewers shall meet, and said viewers shall, under oath, designate the portion to be kept in repair by each of the parties interested, and notify them in writing of the same." Section 5660 provides the fees for the householders appointed and for the collection of the same. Section 5661 has already been set forth. No other section of the statute has any bearing upon the subject under discussion.

What is the meaning of the words with which section 5661 begins, "Every person owning a part of a division fence"? In determining this question we must treat and consider that section as a part of the statute, this for the reason that that section is a part of the statute. In construing any part of a statute the entire statute must be considered together. Cooley's Const. Lim. 70. Either the words mentioned are to be confined to such persons as may own a part of a division fence by virtue and in pursuance of the provisions of section 5659, or they are not to be so confined. If the words are not to be thus limited in their meaning and effect, they cannot be limited at all and they must be given the broad and general meaning natural to them. There can be no middle ground. There is nothing in the entire statute to enable us to draw a dividing line. It would seem that as a matter of course the words would be thus

limited, being as they are a part of the statute, and section 5659 providing, as it alone of the entire statute does, for dividing the division fence into separate parts. But a brief consideration of the question will show that the words must be thus limited. Unless they are so limited one who builds an entire division fence which remains undivided, and, therefore, the property of him who builds it, would have to repair it or be subject for a failure to do so to the penalties imposed by section 5661. This cannot be the intent of a statute which, as is shown by every other line of it, was enacted for the benefit of one who builds an entire division fence. The object of the statute is to enable one who owns a division fence to collect the value of one-half of it from the adjoining land-owner benefitted by it, and to force such adjoining land-owner to keep one-half of the fence in repair. The object of the statute is not to compel him who builds the whole fence to keep it in repair. The owner of the fence, by generously failing to enforce the statute against the adjoining land-owner, does not incur the obligation to keep the fence in repair under the penalties of section 5661. The whole object and intent of the statute being to benefit the builder and owner of the division fence, the meaning of the general words of section 5661 must be limited as suggested. The rule is that if "a literal construction of one section would conflict with every other following and preceding it, and with the entire scope and manifest intent of the act, it is certainly the duty of the court, if it be possible, to harmonize the various provisions with each other, and to effect this it may be necessary to depart from the literal construction of one or more sections." *State to use v. Heman*, 70 Mo. 451. The words of section 5661, "every person owning a part of a division fence," therefore, mean every person owning a part of a division fence, which part has been fixed and determined under section 5659 by the agreement of the parties, or by the householders appointed as therein provided in case of a failure of the parties to agree. Until a division fence has been divided or partitioned

under said section of the statute the duty created by section 5661 rests upon no one, and the penalties imposed thereby cannot be incurred.

By section 5659 it is provided that if the parties cannot agree as to the part of the division fence which each is to have and keep in repair, a justice of the peace of the township may appoint disinterested householders of the township to proceed in the manner provided by the statute and designate the portion to be kept in repair by each party. It is apparent at a glance, and too plain to be questioned, that if in any given case the justice of the peace would not under the facts be authorized to appoint the householders to proceed and designate the portion of the fence to be kept in repair by each of the parties, where the parties had failed to agree in relation thereto, then an agreement between the parties under the same facts would be an agreement not under the statute but outside of the statute. The statute provides for a partition of the fence in case the parties fail to agree. The statutory partition takes the place of the agreement. The one is equal to the other. Wherever one can be made under the statute the other can be made, but wherever one is not authorized by the statute neither is the other. The partition of a division fence provided by section 5659 is of such a fence and of such a fence only as that for ascertaining and collecting the value of one-half of which sections 5656, 5657 and 5658 provide. In no case can there be a partition under the statute of a division fence, unless also under the statute the value of one-half of the fence can be determined and collected. The sections last named and section 5659 so clearly, plainly and unmistakably refer to the same kind of a division fence, that the statement of the fact needs no argument in its support.

Section 5656 provides only for a case where one owns the entire division fence and the fence is a lawful fence as defined by section 5652. Section 5656 has to do only with the case where "the fence of any owner of real estate now erected or constructed, or which shall hereafter be erected or constructed, the same being a

lawful fence as defined by sections 5651 and 5652, serves to inclose the lands of another or which shall become a part of the fence inclosing the lands of another." In no other case can the section have any application. A division fence erected jointly by the adjoining land-owners is not within the statute. An agreement between such owners in relation to the erection of a division fence is not within the statute. An agreement as to the partition of a division fence jointly erected and owned by the land-owners is not within the statute. In all such cases the parties are left to their contracts. If the land-owners cannot agree, either of them can erect the division fence and obtain the benefit of the statute. But if they make an agreement, the agreement and not the statute determines their rights. The court tried the case on a theory contrary to the views expressed herein. There was no evidence tending to show any liability against the defendant in accordance with those views. The court refused an instruction asked by the defendant which, as far as it went, was in harmony with those views. For this reason the judgment must be reversed.

Judgment reversed and cause remanded. PHILIPS, P. J., concurs.

### On rehearing.

ELLISON, P. J.—The argument or reasoning of Judge HALL is to sustain a conclusion embodied in three propositions stated by him, viz., first, that "a division fence erected jointly by the adjoining land-owners is not within the statute;" second, that "an agreement between such owners in relation to the erection of a division fence is not within the statute;" third, that "an agreement as to the partition of a division fence jointly erected and owned by the land-owners is not within the statute." I am unwilling to concur in the first and third propositions. They involve the holding, and it is, in effect, so stated, that there can be a division fence only where the adjoining owner owns entire an already existing fence and that this fence already in existence, under the entire ownership of one proprietor,

is a *necessary* basis out of which can come a division fence under the statute. This view would make it impossible for adjoining proprietors who enclosed at the same time to have a division fence unless one alone built the fence between them and the other paid him for it after he had completed it. So it would make it impossible for such proprietors to ever have a division fence which they owned in common unless one would sell his interest to the other, thereby putting the entire ownership in that other, and then buy back the interest he had sold, or permit himself to be sued for it. So too, it would prevent adjoining owners, who were, at the same time, fencing in outlying lands from "joining hands" and material and building the fence together.

By the proviso in section 5656, it is enacted that the adjoining owner may, at his option, build one-half the fence instead of paying for one-half of that already erected. I do not see why they may not build each his half in the first instance, or build jointly, and in either case divide it for repairs and have a statutory division fence. This is the reason of the matter and ought to prevail, unless the language of the statute is incompatible with such construction, and I think it is not. That the absolute letter of section 5656 need not be followed, is apparent. It provides that pay for one-half the fence shall be demanded by the owner, yet, of course, if the adjoining proprietor paid for one-half without demand, it would be a statutory division fence. So it provides that the adjoining proprietor shall pay for one-half the fence, yet it would not destroy the character of the fence if he did not pay but accepted of it as a gift. I only refer to this to show that we need not stand out for the *very letter* of this statute.

I agree to the second proposition, that an agreement between such owners for the erection of a division fence is not within the statute, for this is only a contract to erect a fence, and is not provided for nor contemplated by the statute. And for this reason I think the third instruction should have been given, viz.: "3. If the jury believe from the evidence that certain cattle, on or

about the twenty-fifth day of July, 1886, entered the cornfield of plaintiffs at a point where there was no fence and where there had been no fence between plaintiff Mackler's land and defendant's land, you will find your verdict for the defendant, although you may further believe from the evidence that defendant had agreed and promised to build and maintain a fence at such point." There was evidence tending to support the hypothesis put to the jury by this instruction and it was error to refuse it.

For this reason the judgment will be reversed and the cause remanded. RAMSAY, J., concurs; HALL, J., adheres to the original opinion in the cause.