FRANK O'RILEY, Respondent, v. JOHN DISS, Appellant.

Kansas City Court of Appeals, May 12, 1890.

1. **Fences and Inclosures**: STATUTE AND COMMON LAW : COMMON INCLOSURE. By the common law no man was bound to fence his close against an adjoining field, but every man was bound to keep his cattle in his own field at his peril; but the statute concerning fences and inclosures abrogates the common law as to outside fences, The common-law power still regulates the relations of the parties in the cases of adjoining fields which are within a common inclosure, and such owners are not bound to fence against each other unless the duty is enjoined by prescription or agreement.

2. **Contract**: MUTUAL COVENANTS TO MAINTAIN DIVISION FENCE : DEPENDENT. The covenants in an agreement of adjoining proprietors to maintain a division fence between their several holdings are mutually concurrent and dependent covenants, and neither party can maintain an action for a breach thereof without alleging and approving performance on his part. (The rules in relation to dependent and independent covenants set out and discussed in the opinion.)

O'Riley v. Diss.

3. ———— : WAIVER OF : FAILURE TO MAINTAIN FENCE : COMMON LAW : RIGHTS AND REMEDIES. Where both parties fail to maintain a division fence as they had mutually covenanted to do, such conduct amounts to a mutual waiver of the contract duty, and then the common-law right and remedies revived and are in force between them.

4. ———— : MAINTAINING DIVISION FENCE : INSTRUCTIONS. Some instructions given and refused examined, and certain ones with modifications *held* a fair presentation of the law in this case.

*Appeal from the Nodaway Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*E. A. Vinsonhaler* and *Wm. Ellison*, for appellant.

(1) To reverse the decision of the lower court, we rely principally on the proposition, that if each of two persons, owning adjoining tracts of land, makes a concurrent promise to build and maintain a certain portion of a division fence between them, so that it will turn stock (the only consideration being a promise for a promise), and neither builds his part, so as to meet the requirements of a division fence under the statute, then, before either can recover from the other, for injuries to growing crops by cattle, he must allege and prove that he built and maintained his part, as by the agreement he was bound to. (2) Did the court below err in refusing the instruction as offered? Plaintiff cannot thus declare on one cause of action and recover on another. *Lewis v. Slack*, 27 Mo. App. 119 ; *Bank v. Armstrong*, 62 Mo. 59 ; *Kneale v. Price*, 29 Mo. App. 227. On what theory did defendant owe plaintiff the duty to maintain a certain part of the fence? What was the consideration? It was a reciprocal duty which plaintiff owed to defendant. If, therefore, plaintiff disregarded his duty, will he be permitted to sue defendant because he followed his example? The law denies redress to one who has suffered from another's fault, if he, himself, is to blame in the same thing.

*Studwell v. Ritch*, 14 Conn. 292 ; *Eyerman v. Cem. Ass'n*, 61 Mo. 489 ; *Butler v. Manny*, 52 Mo. 497 ; *Lewis v. Slack*, 27 Mo. App. 119. There being some evidence tending to prove that plaintiff suffered his part of the fence to be and remain out of repair, so that cattle passed through it, the above instruction should have been given as offered. In this state, however, the common law, which requires an adjoining proprietor to keep his stock in his own field, is not in force. *Heald v. Grier*, 12 Mo. App. 556 ; *Fenton v. Montgomery*, 19 Mo. App. 156 ; *Demetz v. Benton*, 35 Mo. App. 559 ; *Mackler v. Cramer*, 32 Mo. App. 542. ( 3 ) Did the court err in giving the instruction as modified ? The allegation is a breach of a special contract in full force ; the proof is, an abandonment of the contract, and a failure or omission to perform a duty imposed by the common law,—a contract in the pleadings, a trespass in the evidence. *Lanitz v. King*, 93 Mo. 513 ; *Lewis v. Slack*, 27 Mo. App. 119.

*Johnson & Craig, L. M. Lane* and *B. P. Duffy*, for respondent.

( 1 ) There is no contention in this case as to the character of the division fence. It was a fence built by contract and no pretense that it was a statutory one ; hence, under it, the rights and obligations of the parties must be governed by the contract and the common law. ( 2 ) The common law has been so modified in this state, as in many others, as to permit cattle to run at large in the highways and upon uninclosed lands in this state ; and no man can recover for their trespasses without showing that his premises were inclosed by a lawful fence ; but no man has a right to pasture his cattle in his neighbor's field, without regard to the kind of fence he may have. *Hughes v. Railroad*, 66 Mo. 325 ; *Turner v. Thomas*, 71 Mo. 596, and authorities. ( 3 ) Where two adjoining owners inclose their land with a common

fence or inclosure, they need not erect or maintain any partition fences; and they, by inclosing their land with a common fence, assume their common-law duties and liabilities toward each other. In other words, when they inclose their lands they thus take them from under the modified form of the law as recognized in this state, and the common law governs without regard to division fences; they are not bound to build them. *Bronson v. Coffin*, 108 Mass. 189; *Broadwell v. Wilcox*, 22 Iowa 568; 92 Am. Dec. 404; *D'Arcy v. Miller*, 86 Ill. 102, s. c., 29 Am. Rep. 11; *McBride v. Lynd*, 55 Ill. 411; *Mulligan v. Wetsinger*, 68 Pa. St. 235; *Baker v. Robins*, 9 Kan. 303; *Winters v. Jacobs*, 29 Iowa, 115; *Daniels v. Aholtz*, 81 Ill. 440. ( 4 ) Our statutes in force at the time, sections 5651, 5652, and 5653, Revised Statutes, 1879, and acts amendatory ( Laws, 1885, pp. 166, 167; Laws, 1887, p. 194), have reference to outside and not to division fences. *Reddick v. Newburn*, 76 Mo. 423; *Meyers v. Dodd*, 9 Ind. 290; s. c., 68 Am. Dec. 624; *Cook v. Morea*, 33 Ind. 697; *Johnson v. Wing*, 3 Mich. 163–70. ( 5 ) The parties in this case, by contract, built a division fence on the line dividing them, and agreed to maintain it. ( 6 ) The covenants of the contract of these parties were mutually independent, and not dependent, ones. *Cook v. Johnson*, 3 Mo. 239, 241; *Simmons v. Beauchamp*, 1 Mo. 589; *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 268, 270–3.; *Butler v. Manny*, 52 Mo. 497, 505, 506; *Tompkins v. Eliott*, 5 Wend. ( N. Y.) 496; Rapley, Law Dic. " dependent;" *Robinson v. Harbour*, 42 Miss. 795; 97 Am. Dec. 501, 503–4; *Betts v. Perine*, 14 Wend. ( N. Y. ) 219.

SMITH, P. J.—The plaintiff and the defendant were the owners of adjoining farms, occupied by them in severalty and which were inclosed by a common fence. In 1882 they agreed to construct and maintain a division fence on the line dividing their farms, the plaintiff agreeing to construct the east thirty rods of the

said fence in consideration that the defendant constructed the west fifty rods thereof. The fence was to be sufficient to prevent the stock of each from trespassing upon the other. The fence was built. Thus far the facts are undisputed. There was some evidence adduced which tended to show that neither party had constructed the kind of fence that the agreement required. But, if they did, it is certain that the defendant did not maintain his part of it so that it was sufficient to prevent his stock from trespassing upon the plaintiff. The defendant turned loose upon his premises a herd of cattle, which strayed across the division line at a point within the fifty rods of fence, which defendant had agreed to erect and maintain, and destroyed the plaintiff's crops of grain. This suit was brought on the agreement.

The complaint in effect alleged that plaintiff had performed all the conditions of said contract on his part and that defendant had not, in that he had neglected to maintain his part of said fence as he had bound himself to do, whereby his cattle which he had turned loose on his premises had strayed through defendant's part of said fence where the same was defective and entered upon the plaintiff's premises and destroyed his crops. The plaintiff had judgment in the court below, to reverse which the defendant prosecutes this appeal.

I.   Our statute concerning inclosures entirely abrogates the principle of the common law which exempted the proprietor of land from the obligation to fence it, and imposed upon the owner of animals the duty of confining them to his own premises. *Gorman v. Railroad*, 26 Mo. 441; *Heald v. Grier*, 12 Mo. App. 556; *Hartz v. Dolde*, 7 Mo. App. 564; *Knaus v. Railroad*, 6 Mo. App. 397. By the common law every man was bound to keep his cattle on his own lands. No man was bound to fence his close against an adjoining field, but every man was bound to keep his cattle in his own

field · at his peril. *Hughes v. Railroad*, 66 Mo. 325; *Rust v. Low*, 6 Mass. 9; *D'Arcy v. Miller*, 86 Ill. 102; *McCormick v. Tate*, 20 Ill. 334.

It has been held that the inclosure statutes apply only to outside fences. *Mack v. Moon*, 33 Ind. 497. The common law regulates the relations of the parties in cases of adjoining fields which are within a common inclosure. *Baker v. Robbins*, 9 Kan. 303; *Meyers v. Dodd*, 9 Ind. 290; *Johnson v. Wing*, 3 Mich. 163; *Rust v. Low*, 6 Mass. 90; *McCormick v. Tate*, 20 Ill. 334; *Little v. Lathrop*, 5 Me. 356. When two farms are inclosed by uniting outside line fences, and the owners occupy such farms in severalty, the owners by the common law are not bound to fence against each other unless the duty is enjoined by prescription or by agreement. Without either of the obligations resting upon them they would be bound respectively to keep their cattle on their own close and to prevent their escape. *Johnson v. Wing*; 3 Mich. 160; 4 Kent. Com. 438; 3 Black. Com. 209; *Bronson v. Coffin*, 109 Mass. 173. If either party puts cattle on his own lands and they enter upon the land of the other, there being no partition fence, he will be liable therefor. *Mackler v. Cramer*, 32 Mo. App. 542; *Baker v. Robinson*, 9 Kan. 503; Shear. & Redf. on Neg., sec. 315; Chitty on Plead. 82, 83; *Johnson v. Wing*, 3 Mich., *supra*. If parties desire to avoid the common-law duty in cases of adjoining fields they may do so by establishing a division fence either under the statute or by agreement. When this is done then the obligation to keep their cattle on their own land ceases to be in force. *Daniels v. Aholtz*, 81 Ill. 440; *D'Arcy v. Miller*, 86 Ill. 102. It follows from what has been said that at the time the parties in this controversy entered into the agreement to erect and maintain the division fence between their farms, that neither party was authorized to turn his cattle loose so that they would stray upon the lands of the other. This being their legal relation then it would continue unless

set aside or abrogated by the erection and maintenance of a division between them. It seems from what was said by Judge Ellison in *Mackler v. Cramer*, 32 Mo. App., *supra*, that when there is an agreement between the proprietors of adjoining farms, which are inclosed by a common fence, to build a partition fence, that in case such fence is not built as agreed upon and that if the cattle of the party, who has failed to comply with his agreement in that regard, escape through the part of the fence he was bound to build and injure the crop of the other party, he is liable to such other party therefor.

The question now is, were the common-law duties of the parties to each other superseded by those imposed by agreement at the time plaintiff's crop was damaged. The solution of this question necessarily requires the consideration of the further question which is, Was the obligation of each of the parties to build and maintain a specified part of the division fence dependent or independent covenants. The rule seems to be well settled that where there are several covenants which are independent of each other one party may bring an action against the other for a breach of his covenants without averring and showing performance on his part. When on the other hand the covenants are dependent it is necessary for the plaintiff to aver and prove performance and demand performance by the other party of his part of the agreement to entitle himself to an action for the breach of the covenants on the part of the defendant. *Butler v. Manny*, 52 Mo. 497; *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 268. In the last-named case it is said that the "American courts as a general rule are adverse to holding that covenants in an instrument are independent unless such intention clearly appears by the terms since it is manifestly unjust that one party should refuse to be bound and yet be allowed to enforce performance against the other." In *Robinson v. Harbour*, 46 Miss. 795, it is said that covenants are to be construed to be

either dependent or independent of each other according to the intention and meaning of the parties and the good sense of the case. In order to discover that intention, and thereby learn with some degree of certainty when performance is necessary to be averred in the declaration, and when not, a number of rules are laid down by the court which we here transcribe :

"*First.* If a day be appointed for the payment of money or a part of it, or for doing any other act, and the day is to happen or may happen, before the thing which is the consideration of the money, or other act, is to be performed, an action may be brought for the money, or for not doing such other act before performance ; for it appears that the party relied upon his remedy and did not intend to make the performance a condition precedent ; and so it is where no time is fixed for performance of that which is the consideration of the money or other act. *Second.* But when a day is appointed for payment of money or for doing any other act, and the day is to happen after the thing which is the consideration of the money or other act is to be performed, no action can be maintained for the money, etc., before performance. *Third.* When a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be compensated in damages, it is an independent covenant and an action may be maintained for a breach of the covenant on the part of the defendant without averring performance in the declaration. *Fourth.* When the acts or covenants of the parties are concurrent and to be done or performed at the same time, the covenants are dependent and neither party can maintain an action against the other without averring and proving performance on his part." 2 Parsons on Cont. 810. Tested by these rules we must think the covenants which we are considering are independent. There was no time fixed for the building of the fence. Neither party was bound to build his part

of the fence at or by any particular time or before the other was to build his part. But each party has performed the covenant to erect the fence so that there is no question in respect to that matter. In fact the allegation that defendant has failed to maintain the fence necessarily presupposes that the other part of the covenant, to erect it, had previously been performed by defendant.

It is only upon the covenants to maintain that any question does arise. Were these covenants mutually concurrent and dependent? Each party was bound to maintain his part of the fence. It was a concurrent and continuing duty resting on both alike. There was to be no difference in point of time when the duty of the parties to maintain the fence was to begin or to end. This duty was to be performed at exactly the same time. The very nature of the covenants sufficiently shows this. It seems quite plain that the covenants in the agreement in relation to the maintenance of said fence are mutually concurrent and dependent, and, therefore, neither party can maintain an action against the other without averring and proving performance on his part. The defendant's first instruction, which directed the jury in effect that if by mutual agreement defendant agreed with plaintiff to erect and maintain a good and sufficient fence that would turn stock along the west fifty rods of the dividing line between their lands, and that in consideration thereof plaintiff agreed with defendant to erect and maintain a like fence along the east thirty rods of said dividing line ; and if plaintiff, at the time the alleged injury occurred, failed to have a good and sufficient fence that would turn stock on his east thirty rods, then plaintiff could not recover, regardless of whether defendant's portion of the fence was good or not, or whether defendant's cattle got into plaintiff's field and destroyed his corn or not, was refused. The plaintiff has elected to sue on the contract to recover the damages he has sustained, and upon that

O'Riley v. Diss.

theory the instruction just referred to should have been given.  We think it was error to refuse it.

II.  But we do not wish to be understood that even if the facts should be true, as are supposed in said instructions, that the plaintiff is without remedy.  If the fence was allowed by the parties to decay and become insufficient to prevent the stock of each from trespassing upon the other, surely the parties were not thereby absolved from both their contract and common-law obligations as the owners of adjoining farms within a common inclosure.  If both parties failed to maintain the fence, as they had mutually covenanted to do, then this amounted to a mutual waiver of the contract duty. *Mulligan v. Wetsinger*, 68 Pa. St. 235.  When that duty was waived then the common-law obligations which it had superseded were revived between the parties.

Their former common-law status was restored.  So that if the contract had ceased to be operative at the time the defendant turned his cattle loose, and they destroyed the plaintiff's crops, then the common law afforded the remedy.  If the defendant did not violate the obligations of the contract because it has ceased to exist, he did violate his common-law duties for which he is liable.

Instruction number one ( 1 ), given by the court upon its own motion, was, in the main, correct.  If the words, " or as good a fence as the defendant built and maintained," were omitted from it, we do not think it would be exceptionable.  This instruction, with the third given for the plaintiff, when taken in connection with the fourth refused for defendant, it seems to us, would have been a fair presentation to the jury of the law of the case and that all the others, either asked or given, were superfluous.

It follows, from these observations, that the judgment of the circuit court will be reversed, and the cause remanded, to be proceeded with in accordance with this opinion.