JOHN D'ARCY

*v.*

WILLIAM MILLER.

1. DIVISION FENCE—*may be established by agreement.* A division fence between adjoining land-owners may be established by agreement, or it may be established under the statute regulating partition fences.

2. Where two adjoining land-owners agreed to divide a partition fence between them, allotting to each a certain part thereof, and such fence is built and repaired by such parties accordingly, and also by subsequent grantees of one of such owners, the fence will be regarded as a division fence.

3. ADJACENT OWNERS—*duty to keep stock on their own land.* At common law, every man is bound to keep his cattle on his own land or respond in damages for their trespasses; and it was one of its rules that no man is bound to fence his close against an adjoining field, but every man is bound to keep his cattle in his own field at his peril. But this legal obligation might be changed by prescription and by covenant, and in this State it can be done under the statute regulating partition fences.

4. TRESPASS—*by stock from adjoining field.* If cattle or hogs escape through a line or division fence, whether established by the act of the parties or under the statute, and do damage, before the party injured can recover for crops destroyed he must prove that the stock came through that part of the fence belonging to the defendant; or, if the defendant's stock pass through the line fence belonging to each party, then the plaintiff must prove the amount of damage occasioned by the stock passing through the defendant's portion of the fence, in order to recover for that part of the damages sustained. If the stock pass through the plaintiff's part of the fence, through its insufficiency, he can not recover of the defendant for any damage they may do.

APPEAL from the Circuit Court of Will County; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action of trespass, originally brought before a justice of the peace, by William Miller against John D'Arcy, and taken by appeal to the circuit court, where a trial was had, resulting in a judgment in favor of the plaintiff for $76.

Messrs. HALEY & O'DONNELL, for the appellant.

Mr. C. B. GARNSEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought to recover damages for certain crops destroyed, in the years 1873 and 1874, by the hogs of appellant. The parties occupy adjoining farms, divided by a line fence. Appellant's hogs passed through this fence and did the damage complained of. The testimony is ample to establish the fact that the hogs were in the possession and control of appellant at the time the damages were sustained. From the proof, he had them in charge, claiming to own them, when a portion of the hogs were shut up by appellee. Appellant filed an affidavit of ownership and replevied them. From these and other like facts in evidence appellant could not shield himself behind the alleged position that the hogs were in the possession of another, nor do we doubt the fact that appellee was damaged to an amount at least equal to the judgment recovered; but the serious question is, whether, under the evidence, appellee can recover a judgment for any amount. The appellant testified — and upon this point he is uncontradicted — that, in 1855, the line fence from the road to the river was divided between himself and Swalm, who then owned the land now occupied and owned by appellee, and each built the portion allotted to him in the division. He further testified that after the father of appellee, under whom appellee claimed title, purchased of Swalm, he showed him the part Swalm owned and the portion he owned. The appellee testified that he built a portion of the fence between the hog-pasture and the corn-field, and that he repaired portions of the fence claimed by appellant as well as his own.

Now, if it be true, as the testimony tends to show, that appellant and Swalm, the former owner, agreed upon a division of the fence, and built and kept in repair in accordance with the agreement, and that after appellee's father purchased he recognized and acquiesced in the division so made, and appellee, since he acquired an interest in

the land from his father, continued to recognize the division, we are aware of no reason why the fence may not be regarded as a division fence between the parties. A division fence may be established by agreement, or it may be established under the statute regulating partition fences. This is the doctrine of *McCormick* v. *Tate*, 20 Ill. 334, where it is said : " By the common law, every man was bound to keep his cattle on his own land, or respond in damages for their trespasses. And it was one of its rules that no man is bound to fence his close against an adjoining field, but every man is bound to keep his cattle in his own field at his peril. *Rust* v. *Low*, 6 Mass. 91 ; Bro. on Trespass, 345, 359 ; F. N. B. 128. But this legal obligation might be changed by prescription and by covenant. And in this State it can be done under the statute regulating partition fences. If parties desire to avoid the common law duty in cases of adjoining fields, they may do so under our statute by compelling contribution for the erection and maintenance of such a fence." If, then, the line fence was a partition fence, before appellee could recover damages for crops destroyed by appellant's stock the law required him to prove that appellant's stock came through that part of the partition fence belonging to appellant. Or if appellant's stock passed through the line fence belonging to each party, then it would devolve upon appellee to prove the amount of damage occasioned by the stock passing through appellant's portion of the fence, in order to recover for that part of the damages sustained. After a partition fence was established between the parties' lands, the common law, which required adjoining owners to each keep his stock upon his own land, was no longer in force. Appellee was, therefore, bound to show, before a recovery could be had, that the damages sustained were not occasioned by his own negligence ; in other words, that the stock that damaged the crops did not pass through appellee's own defective fence. This is the doctrine of *Shepherd* v. *Hess*, 12 Johns. 433, where the plaintiff proved defendant's hogs repeatedly came into his

corn-field through a partition fence which divided their farms, and destroyed his corn. Defendant proved that plaintiff's fence, through which the hogs entered, was out of repair and insufficient; to which the plaintiff replied by showing a by-law of the town whereby it was provided that all hogs should be kept up, under a certain penalty. The court held that the by-law had no application to a case where there was a partition fence; and said: "The case rests, then, upon common law principles, independent of the by-law; and it appears that the swine entered the corn-field through that part of the interior fence which the plaintiff below was bound to keep in repair, but which he suffered to decay, so as to be utterly insufficient; the loss he complained of was occasioned by his own negligence; and he has suffered *damnum absque injuria.*" The same principle was held in *Ozburn* v. *Adams*, 70 Ill. 291. Appellee in his evidence says: "In 1874 the hogs came in all the way along from the road to the river on the south side." If this be true, as we understand the facts of the case, a part of the time the hogs passed through a portion of the fence appellee was bound to keep in repair. Under such circumstances we can not perceive any principle upon which the judgment can be sustained. Appellee seems to have tried his case on the theory that at common law each adjoining owner was required to keep his stock on his own land, at his peril. In this he would have been correct had no partition fence been established; but when it was proven that a partition fence had been agreed upon and erected, it devolved upon appellee to show that the damages he sought to recover arose from stock passing through that portion of the fence appellant was bound to keep in repair. As he failed in this, the judgment will be reversed, and the cause remanded for another trial consistent with the views here expressed.

*Judgment reversed.*