LAWRENCE F. GROWNEY, Respondent, v. WA-
BASH RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, November 9, 1903.**

1. **Fences and Inclosures:** COMMON LAW: DIVISION FENCES.
At common law the owner must keep his cattle up, and parties to a
common inclosure to avoid the common law can establish division
fences under the statute or by agreement; otherwise each is liable
for the damage done by his cattle on the lands of the other.

2. ———: ———: ———: TRESPASSING CATTLE. Where divis-
ion fences are established, the owner of trespassing cattle is not
liable to the other unless they escaped onto the latter's premises
through a defective portion of the division fence which that owner
was bound to maintain.

3. **Railroads:** KILLING STOCK: FENCES: ADJOINING PROPRIE-
TOR. Where the fence inclosing a railroad right of way is de-
fective and the fence on the other three sides of the adjoining field
are not lawful fences, then such latter fences are not a substitute
for the former fence, and the railroad company has failed in dis-
charging the duty of fencing its track.

4. ———: ———: ———: ———: KILLING STOCK. The stock
law, restraining the running at large of cattle, is no defense to a
railroad company for failure to properly fence its right of way; and
in construing the latter statutes the former are not *in pari materia.*

Appeal from Nodaway Circuit Court.—*Hon. Gallatin
Craig,* Judge.

AFFIRMED.

*Ellison & Shinabargar* with *George S. Grover* for
appellant.

(1)   The animal having passed from the pasture
of respondent into an adjoining field belonging to a
neighbor, through a defective and unlawful partition

fence, it was a trespasser in the latter field unless it appears that it passed through at a point where the neighbor was bound by agreement or otherwise, to maintain the fence. Where the stock law is in force, one is not required to fence against another's cattle, in the absence of an agreement to that effect, whether the cattle are in an adjoining inclosure or on the commons. Jones v. Habberman, 94 Mo. App. 1; Jackson v. Fulton, 87 Mo. App. 228; O'Riely v. Diss, 41 Mo. App. 184. (2) It does not appear that the animal in the case at bar, was in the neighbor's field by his consent, nor does it appear whether it was a statutory partition fence, or one built and maintained by agreement between adjoining proprietors. Neither does it affirmatively appear which one of the adjoining proprietors (if either) was bound to keep in repair the fence at the point where the animal passed through; but to avoid the presumption that the animal was trespassing, it devolves on respondent to show consent of the adjoining proprietor, or that it was the latter's duty to maintain the fence at the place where the steer got through. Smith v. Railway, 25 Mo. App. 113; Carpenter v. Railroad, 25 Mo. App. 110; Geiser v. Railroad, 61 Mo. App. 459. (3) If an animal on a railroad track is injured by a passing train, the company is not liable though it got onto the track from an adjoining field through an unlawful railroad fence, if it was a trespasser in the field. Whether the animal got into the field through a lawful outside fence, or through a defective division fence, which the owner of the animal was bound to maintain, makes no difference. The particular circumstances which constitute the animal a trespasser are immaterial. The liability of the company depends not on what particular facts make the animal a trespasser, but on the fact that it is a trespasser. "The duty to fence, imposed by statute upon railway companies, does not exist for the benefit of a stranger to the owner of such field." If the animal was not lawfully in the field, from which it escaped onto the rail-

road, the company is not liable. Smith v. Railroad, 25 Mo. App. 113; Geiser v. Railroad, 61 Mo. App. 459; Carpenter v. Railroad, 25 Mo. App. 110; Ferris v. Railroad, 30 Mo. App. 122; Johnson v. Railroad, 80 Mo. 620; Peddicord v. Railroad, 85 Mo. 160; Young v. Railroad, 39 Mo. App. 52.

*P. L. Growney* for respondent.

(1)  The railroad company is bound to erect and maintain a lawful fence on the sides of its roadbed, where it passes through inclosed and cultivated lands. R. S. 1899, sec. 1105. And under the stock law provisions, it is especially provided that "nothing herein contained shall be construed to lessen or interfere with the obligations of the several railroads in this State to fence the right of way of such railroads as is now provided by law." R. S. 1899, secs. 3295, 4781. (2) In addition to these plain statutory provisions, our appellate courts have well settled the point that this stock law does not apply to an action based on section 1105, so as to exempt the railroad from the double liability imposed by that section for damages resulting from its failure to fence its road, where required by law. Stanley v. Railway, 84 Mo. 625; Bowman v. Railway, 85 Mo. 533; Kingsbury v. Railway, 156 Mo. 379; Darby v. Railway, 156 Mo. 391; Morrow v. Railway, 17 Mo. App. 103; Boyle v. Railway, 21 Mo. App. 416; Coyle v. Railway, 47 Mo. 624; Kirkpatrick v. Railway, 71 Mo. App. 263. (3) If, however, the company failed to maintain a proper fence along its right of way where it passes through the lands of an adjoining proprietor, "they omit to do so at their peril if the field be not enclosed by a lawful fence and cattle get into the field and from the field go upon the road and are killed by a passing train." Berry v. Railroad, 65 Mo. 175. The above distinction is clearly made by numerous decisions in this State. Emmerson v. Railroad, 35 Mo. App. 629; Duke v. Railroad, 39 Mo.

App. 107; Board v. Railroad, 36 Mo. App. 153; Jackson v. Railroad, 43 Mo. App. 325; Dean v. O. & St. L. Co., 54 Mo. App. 649.

SMITH, P. J.—This is an action based on section 1105, Revised Statutes 1899. At the trial in the circuit court, where the cause was removed by appeal from the justice's court, the parties at the conclusion of the evidence entered into a stipulation under which it was agreed that, "the steer in question escaped from the owner's (plaintiff's) premises through a defective and unlawful division fence between plaintiff's land and that of his neighbor, Keeler, and from the latter's land upon the right of way of defendant's road through an unlawful fence at a point where defendant's road passed along and adjoined such latter's land.

The court made a special finding to the effect (1) that "plaintiff and Keeler, from whose pasture or inclosure the steer went upon the railroad, were adjoining landowners to said railway, and that the inclosure of plaintiff from which the steer escaped into Keeler's field also adjoined the railway;" and (2) that "at about the time and place named in the complaint, plaintiff's steer passed from his field into the adjoining field of one Keeler, through an unlawful and defective fence dividing the fields; that the stock law was then and there in force; that from said Keeler's field, said steer passed through a defective, unlawful and wholly insufficient fence inclosing the right of way next to said Keeler's field onto defendant's railroad, and then and there received the injuries complained of by being struck by defendant's passing engine and cars."

Thereupon the defendant requested the court to give the following declarations of law, which it refused: (1) "On these facts the court declares the law to be that said steer was trespassing in said Keeler's field at the time it passed from the same onto said railroad, and the plaintiff can not recover." (2) "The court de-

clares the law to be that, under the evidence in this case, the verdict should be for defendant."

The plaintiff was given judgment for damages under said section 1105. The only question thus arising is as to the propriety of the action of the trial court in refusing the defendant's instructions.

By the common law, every man was bound to keep his cattle on his own lands. No man was bound to fence his field against an adjoining one. Every man was bound to keep his cattle in his own field at his peril. It —the common-law—regulates the relations of parties in cases of adjoining fields which are within a common inclosure. If parties desire to avoid the common law in cases of adjoining fields, they may do so by establishing a dividing fence either under the statute or by agreement, and when this is done the obligation to keep their cattle on their own land ends. O'Riley v. Diss, 41 Mo. App. 184; and authorities there cited; Jackson v. Fulton, 87 Mo. App. 228; Jones v. Habberman, 94 Mo. App. 1; Hughes v. Railway, 66 Mo. 325.

And so we have held that where two farms are inclosed by uniting outside fences, and the owners occupy such farms in severalty, and one of them puts cattle on his own lands and they enter upon the land of the other, he will be liable to such other therefor. Mackler v. Cramer, 32 Mo. App. 542; Hopkins v. Ott, 57 Mo. App. 292; Field v. Bogie, 72 Mo. App. 186; Jones v. Habberman, supra. But, we have also further held in the same cases—those just cited—that if such owners agree upon a division fence and the part each shall maintain, then they may each turn his cattle into his own inclosure without being liable for their escape onto that of the other unless they escape through a defective portion of the division fence which their owner was bound to maintain under the agreement.

It stands admitted in the present case that the division fence between the lands of the plaintiff and the adjoining lands of Keeler was not a lawful fence. It was,

a very defective and insufficient fence. It was, in prac-
tical effect, no fence at all. It does not appear when or
who constructed the fence, or that it was in part or in
whole constructed or maintained under any agreement
between the adjoining landowners. As far as we can
discover, the case between the plaintiff and Keeler is
one where the common law governs the relations be-
tween them, and where each was required to keep his
cattle on his own land, or in his part of the common in-
closure, at his peril. As between them, when the plain-
tiff's steer escaped upon the land of Keeler it could not
go thereupon without rendering the plaintiff liable for
its incursion.

But how can the application of these principles of
the common law to the relations between plaintiff and
Keeler, help the defendant? That part of its fence along
its right of way on which Keeler's land abutted was
unlawful and defective, and the fences inclosing the
other three sides of his land were not lawful fences; so
that the latter was no legal substitute for the former.
It thus appears there was no lawful fence whatever
where defendant's right of way adjoined Keeler's land.
The defendant had not discharged the duty of fencing
the side of its road at that point, as required by the
statute. Berry v. Railroad, 65 Mo. 175; Peddicord v.
Railroad, 85 Mo. 160; Harrington v. Railroad, 71 Mo.
384; Johnson v. Railroad, 80 Mo. 620.

It is true that it is the settled construction of the
statute that the obligation thereby imposed is enacted for
the benefit of adjoining landowners only, and not for the
benefit of strangers who have not the legal right to use
the adjoining land and farm crossings, and it has been
ruled that where it appears that plaintiff's animal got
upon the railway track from an adjoining field of
another landowner at a place where the railway did not
maintain the fence required by the statute, the plaintiff,
in order to make out a case, must show that the sides
of the field of such landowner, other than that adjoining

the railway, were not everywhere inclosed by a lawful fence. Carpenter v. Railroad, 25 Mo. App. 110, and cases there cited. While the unlawful fence between the plaintiff and Keeler was a division fence, yet, as between the defendant and Keeler it was one of the three fences inclosing the latter's land abutting on the former's right of way. It inevitably follows from these considerations that, when the plaintiff's steer escaped from his adjoining land through an unlawful fence upon that of Keeler and from there went upon the defendant's right of way, between which and Keeler's abutting land there was no lawful fence, and was injured, there is liability.

But it is contended that the stock law was in force at the *locus in quo,* and therefore Keeler was not required to fence his land against the cattle of plaintiff and adjoining landowner. The rights, duties and obligations of these landowners, whatever they may have been as between themselves, under the stock law can have no bearing in this case because that law expressly provides that nothing therein shall be construed to lessen or interfere with the obligations of the several railroads in this State to fence their right of way as now provided by law. R. S. 1899, secs. 4781-4777. And a similar provision is to be found in the fencing act. R. S. 1899, sec. 3295.

The provisions of the statute requiring railroads to fence their right of way are not *in pari materia* with those of the stock law. They deal with distinct subjects. The latter does not relieve such companies of the duty enjoined on them by the former. It in terms forbids such a construction. There is no repugnancy or repeal by implication of the former by the latter. Both can stand together. Kirkpatrick v. Railway, 71 Mo. App. 263; Cole v. Railway, 47 Mo. App. l. c. 629; Morrow v. Railway, 17 Mo. App. 103; Boyle v. Railway, 21 Mo. App. 416; Stanley v. Railway, 84 Mo. 625; Bowman v. Railway, 85 Mo. 533; Kingsbury v. Railway, 156 Mo.

l. c. 388; Darby v. Railway, 156 Mo. 391. These cases all hold that the passage of the stock laws, requiring certain domestic animals to be restrained from running at large, in no way changes or alters the obligations imposed by the statute on railroads in respect to the fencing of their right of way. This construction is so well settled as not to be open to any doubt.

We therefore conclude that the circuit court did not err in refusing the defendant's instructions, and accordingly the judgment must stand affirmed. All concur.