## COLLINS *v.* COCHRAN.

1. Coterminous landowners may by agreement assume an obligation to maintain a partition fence, each agreeing to keep up a designated part; and if the hogs of one enter the land of the other through a defect negligently left in that part of the fence which the first was bound to repair, he is liable for the damages done by such hogs.

2. The validity of the obligation of the coterminous owners to maintain a sufficient fence against their stock is not affected by the fact that they do not contemplate maintaining and do not in fact maintain a fence of such character and height as to constitute a lawful fence under the statute. By agreement they can take their fence, relatively to the rights of each against the other, from under the operation of the statute.

3. Where in such case the owner of the hogs agreed that the amount of the damages should be submitted to arbitration, and that certain of the hogs should be retained by the party injured as a pledge for the payment of the damages assessed, and subsequently the owner of the hogs refused to make a submission to arbitration, the pledgee could recover the reasonable ex' pense in the mean time incurred by him in feeding such hogs.

Argued December 14, 1904. — Decided January 28, 1905.

Complaint. Before I. A. Bush, judge pro hac vice. Mitchell superior court. January 11, 1904.

*Jesse W. Walters* and *R. J. Bacon Jr.*, for plaintiff in error.
*Samuel S. Bennet*, contra.

SIMMONS, C. J. Suit was brought by Cochran against Collins. From the petition and the evidence of the plaintiff, it appeared that the plaintiff and defendant owned and occupied adjoining farms. For more than twenty years there had been between these farms a line fence, which, though not built and maintained in such way as to make it a lawful fence under the statute, was sufficient to keep stock from passing from one farm to the other. The occupants of the farm now owned by plaintiff had kept up the north end of the fence; the occupants of the other farm, the south end. After the plaintiff and defendant had become the owners of the farms, they entered into an agreement to keep up and repair the line fence, the plaintiff undertaking to maintain the north end and the defendant undertaking to maintain the south end as his predecessors in title had done. The defendant neglected to keep up the south end of the fence and suffered it to get out of repair, by reason of which a large drove of his hogs broke through into plaintiff's lands and destroyed a portion of his crops. The plaintiff

786

COLLINS v. COCHRAN. (121

drove them out, and gave defendant notice that they had broken through. Still the defendant neglected to repair the fence, and his hogs twice again, within the next two days, went upon plaintiff's farm, through the defective south end of the fence, and destroyed a part of plaintiff's crops. The plaintiff impounded some of the hogs, afterward releasing all except a few. These he retained, under an agreement with the defendant, as a pledge until the amount of the damage could be determined by arbitration. Subsequently the defendant refused to submit the matter to arbitration, and the plaintiff then brought suit for damages for the breach of the contract as to the maintenance of the fence. He prayed damages for the value of the property destroyed by the defendant's hogs, and also prayed judgment for the cost of feeding the hogs pending the effort to arbitrate. There was a verdict for the plaintiff, and the defendant moved for a new trial. The motion was overruled by the trial judge, and the movant excepted.

1, 2. Coterminous landowners may by agreement, or by prescription, assume an obligation to maintain a partition or line fence, each agreeing to keep up a designated part. 12 A. & E. Enc. Law (2d ed.), 1047. The validity of this obligation is not affected by the fact that they did not contemplate maintaining and do not in fact maintain a fence of such character as to constitute a lawful fence under our statutes on the subject of fences. Albright v. Bruner, 14 Ill. App. 319. By agreement they can take their fence, relatively to the rights of each against the other, from under the operation of the statute. D'Arcy v. Miller, 86 Ill. 102, 29 Am. Rep. 11. As to the other, each party was bound to maintain his portion of the fence agreed upon without regard to the character of fence prescribed by the statute. When the defendant violated his contract by failing to repair the portion of the fence which he had agreed to maintain, and his stock, because of such failure to repair, entered through this portion of the fence into the farm of the plaintiff and damaged the crops, the defendant was liable for the damage so done. The provisions of our code which relate to fences have no application to the present case. This is not an action for the statutory penalty for failing to maintain a statutory fence, but is a suit for a failure to keep up and maintain a fence under a private contract which, relatively to the parties, took the fence entirely out of the statu-

tory provisions. For this reason the authorities cited by the plaintiff in error have no application. Nor does it matter that the plaintiff below was not shown to have so maintained his portion of the fence as to make it comply with the statutory requirements as to statutory fences. It was enough that he kept up his portion of the fence in accordance with his agreement and in such manner that stock could not get through it. The defendant made a valid and binding contract with the plaintiff. He violated this contract, and as a direct consequence of this violation the plaintiff's property was injured. Defendant was therefore liable to respond in damages for the injuries so inflicted.

3. Under the facts in the present case, the plaintiff could recover not only the value of the crops destroyed but also the cost of feeding those of the hogs which he kept while endeavoring to arrange a submission of the matter to arbitration. The defendant had agreed that the amount of the damage should be submitted to arbitration, and that the plaintiff should in the meantime keep these hogs as a pledge for the payment of the amount assessed as damages. Defendant subsequently refused to make the submission, and should be held liable for the expense of feeding his hogs from the time of his agreement to arbitrate to the time when he finally refused to make the submission.

The motion for new trial complained that the verdict was without evidence to support it, and also that the court erred in charging substantially in accord with what is laid down herein. There was no error in overruling this motion and refusing a new trial.

*Judgment affirmed. All the Justices concur.*