## STATE OF MISSOURI, Respondent, v. PRATER, Appellant.

### St. Louis Court of Appeals, April 14, 1908.

1. CRIMES AND PUNISHMENTS: Maiming Animals: Information. An information charging a defendant with a violation of section 1988, Revised Statutes 1899, is sufficient if it is in the language of the statute.

2. ————: ————: Hogs. Section 1988, Revised Statutes 1899, making it a misdemeanor maliciously or cruelly to maim, etc., "any horse, ox or other cattle," applies to hogs and all other domestic quadrupeds, although they are not mentioned specifically.

3. ————: ————: Lawful Fences. Although a landowner have a lawful fence, he may be prosecuted for killing a trespassing animal; under section 3296, Revised Statutes 1899, he has only the right to hold such animal until the owner pays damage for the trespass.

4. ————: ————: Malice: Proof. Under the provision of section 1989, the malice required to constitute an offense under section 1988 may be inferred, if the act was "wrongly, intentionally and willfully done." This section eliminates the necessity of malice against either the owner or the animal; the malice which enters into the crime is that general malice defined as the "intentional doing of a wrongful act without just cause or excuse."

5. ————: ————: ————: ————: Evidence. In the prosecution of a defendant under section 1988 for maliciously maiming and torturing hogs, evidence that the hogs were breachy, had formerly trespassed upon defendant's premises, destroying his crops and that he had proposed various methods to their

owner to keep them out of his field and only killed them to protect his crop after his proposals had been rejected, was admissible upon the issue of malice; but evidence that after the hogs were dead defendant offered to pay for them, was inadmissible.

6. ———: ———: ———: ———: ———: **Instruction.** And in such case where evidence to show that the previous depredations of the hogs and the effort of the defendant with the owner of the hogs to have them restrained was excluded, an instruction telling the jury that such conduct on the part of the defendant was no defense, was erroneous.

Appeal from McDonald Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*James A. Sturges* for appellant.

*Joseph S. Long,* Prosecuting Attorney, for respondent.

The information is sufficient. It follows the language of the statute, section 1988, Revised Statutes 1899. State v. Pruett, 61 Mo. App. 156; 22 Cyc. 378, 379, 380. Defendant had no right to torture, maim, wound or kill the hogs in order to protect his growing crop, for the reason that the statute sets out the manner and means by which a person shall protect his crop. R. S. 1899, sec. 3295.

GOODE, J.—An information in two counts was filed against this defendant, of which the first charged that he "unlawfully, maliciously and cruelly did maim, wound and torture to death" three hogs belonging to J. N. Taylor, by worrying said three hogs with dogs and by striking and beating and wounding to death the said three hogs with some blunt instrument of an unknown description, from the effect of which striking, beating and wounding, the hogs died. In the second count the defendant is charged, in substantially the same words, with maiming, wounding and torturing

to death six hogs, by striking and beating them with some blunt instrument and by shooting them so that from the effect of the shooting, striking and beating the hogs died. Defendant's own testimony and the other evidence showed he killed ten hogs in the manner charged in the information; that is to say, he set his dogs on several and afterwards beat them over the skull with a hammer until they died, caught others and clubbed them over the head until they were dead, and shot others. Defendant admitted the killing was intentional, but said it was done in defense of his property. The information was based on section 1988 of the Revised Statutes of 1899, follows the language of the statute and is sufficient. [State v. Pruett, 61 Mo. App. 156; State v. Hambleton, 2 Mo. 453; State v. Graham, 46 Mo. 490; State v. Goss, 74 Mo. 592.] The information in this case is similar to those approved in the cases cited, and particularly the one in State v. Pruett, wherein, it may be noted, the court decided the statute declared on, though it only mentions "a horse, ox, or other cattle" as the animals against which the offense may be committed, includes hogs and all other domestic quadrupeds. The present information is on the same statute.

The principal assignment of error relates to the rejection of certain offers of proof made by defendant in the lower court and the treatment of malice as an element of the offense in instructing the jury. Defendant offered to prove the hogs were breachy and at different times for weeks prior to the killing, had ravaged his crops; that he proposed to buy the hogs from Taylor, their owner, requested the latter to pen them, offering to buy the feed required to keep them in a pen, or to pen and feed them himself while his crops were growing, and after the killing offered to pay for them, but the owner rejected all his proposals. Besides excluding proof of these facts, the court, at

the request of the State, gave an instruction in which they were recited in substance, and the jury advised that if it found defendant killed the hogs as charged in the information, the offered facts were no defense. There is no clear proof of where the hogs got into defendant's field, or whether they entered from the owner's field through a division fence or from the range through defendant's outside fences. An attempt was made by the State to show the condition of defendant's fences, but on objection of his attorney the testimony was excluded as irrelevant to the issues. Certain evidence indicates the hogs sometimes entered defendant's field through a gate left open between his and Taylor's fields; whereas other evidence indicates they had been turned on the range by Taylor and entered defendant's field from the outside. It has been held that section 3295 of the statutes which describes what kind of a fence an owner shall inclose his land with, refers to outside and not to division fences. [Reddick v. Newbrun, 76 Mo. 423.] A landowner who has not inclosed his land with lawful fences cannot recover for incursions of stock as provided by section 3295, Revised Statutes 1899. [Mann v. Williamson, 70 Mo. 661; Mackler v. Schuster, 68 Mo. App. 671.] Section 3299 of the statutes deals with division fences, and it has been held that if a division fence is not maintained by the adjoining owners, their common law obligations are revived. [O'Riley v. Diss, 41 Mo. App. 184.] At common law the owner of domestic stock was bound to confine it and was liable for any damage done to crops of other persons by the stock. This rule has been abrogated by our statutes, and it is the duty of a landowner to have a lawful fence if he would recover damages done by the incursions of his neighbor's stock. [Id.] We have referred to these matters in order to indicate the respective rights and duties of the defendant and Taylor, the owner of the hogs, as between them-

selves. But no matter where the hogs got into defend-
ant's field, he had no right to kill them. The proprietor
of adjoining premises may be prosecuted for killing a
trespassing beast, at least unless, in the attempt to
drive it out, it becomes necessary to kill it. [Snap
et al. v. People, 19 Ill. 80; 68 Am. Dec. 582; State v.
Butts, 92 N. C. 754.] Our statutes support this con-
clusion. In the statutes of 1845, dealing with inclo-
sures, it was provided that for the third incursion of
animals where the proprietor had a lawful fence, he
might kill them without being answerable. That sec-
tion corresponds with section 3296 of the present stat-
utes, which, however, omits the right to kill and only
provides that if the proprietor has a lawful fence, the
owner of the trespassing animal shall make reparation
for any damage done by its first trespass, and that for
any subsequent trespass, the party damaged may take
up the animal and hold the same until the owner pays
for the damage and the cost of taking up and keeping
it. We do not understand counsel for defendant to
assert he had the right to kill the hogs because
they were destroying his crop, but that the latter cir-
cumstance and his proposal to the owner of methods
to prevent the damage to his crop, should have been re-
ceived in proof as tending to show the killing, even
though unlawful, was not criminal because it was free
from the evil intent or state of mind which constitutes
malice. We have found this question difficult to re-
solve. Many of the adjudications are not always con-
sistent in principle and they construe diverse statutes.
If cruelty to animals was a criminal offense at common
law, which some writers deny, it was superseded so
entirely in England by statutes as to pass out of view.
[See note to State v. Robinson, 68 Am. Dec. 661.]
Cases founded on the English statute known as the
"Black Act," and on many American statutes, and
other cases treating the offense as a common law

crime, hold it is essential, in order to make out the offense, to prove the accused inflicted the injury on the animal out of malice to its owner; not necessarily a certain person, but whomsoever happened to be the owner; that a spirit of cruelty or revenge toward the animals, is not enough. [1 Bishop, Crim. Law (8 Ed.), sec. 595; Bishop, Stat. Crimes, secs. 432, 436, incl. Hobson v. State, 44 Ala. 380; Chappel v. State, 37 Ark. 345; State v. Linds, 54 Iowa 139; State v. Phipps, 95 Iowa 491; People v. Olsen, 6 Utah 289.] To require proof of malice against the owner implies, that the statute construed was intended to protect the beasts as property instead of as creatures susceptible of suffering. The statutes we are dealing with, like much of the modern legislation on the subject, is designed for the protection of animals against cruelty. This appears from the circumstance that the owner of an animal may violate the statute by inflicting torture on it; for the language is "every person who shall wilfully, and maliciously or cruelly maim, wound, beat or torture a horse, ox or other cattle, whether belonging to himself or others, shall be deemed guilty of a misdemeanor." Moreover the next section of the statute provides that "it shall not be necessary to show, in the trial of an offense for malicious trespass or injury to property specified in this article (i. e., the article of the statutes dealing with offenses against property) that the offense was committed from malice conceived against the owner of the property or against the animal or the property itself; but if the act was wrongfully, intentionally and wilfully done, it may be inferred it was done maliciously." [R. S. 1899, sec. 1989.] Section 1988 creates two offenses in one of which the essential element is the "wilful and malicious" maiming, wounding, etc., and in the other "cruel" maiming, etc. [State v. Taylor, 186 Mo. 608, 614, 85 S. W. 564.] The

130 App.—23

question for decision must be considered with reference to the primary purpose of section 1988, which creates the offense, and of section 1989, which deals with the proof of malice. It is to be observed that neither section dispenses with malice as an essential ingredient of the offense, but both require proof of it. What section 1989 does is to relieve the State from proving it was cherished toward either the owner or the property. Nevertheless, said section, as well as the previous one, retains it as an element of the offense, as was decided by the Supreme Court in State v. Taylor, supra. But the section says malice may be inferred from certain facts. Two questions arise, i. e., what kind of malice must be established to make out the statutory offense, and what evidence is competent on the issue? As the statutes eliminate malice against the owner and against the animal, no other species can enter into the act denounced except that general malice which pervades all crimes but a few statutory offenses like illegal sales of intoxicants, and which is defined as the "intentional doing of a wrongful act without just cause or excuse." [State v. Wieners, 36 Mo. 20; State v. Ellis, 74 Mo. 207, 214; Trauerman v. Lippincott, 39 Mo. App. 478, 488.] According to Bishop, where some specific malice is not intended in statutes against injuring animals, the general malice of the law of crime is intended. [Stat. Crimes (3 Ed.), secs. 432a, 436.] He comments elsewhere with irony on the confusion caused by the use of terms which have acquired a subtle and purely technical sense:

"The appropriate place for these words is in criminal pleading, where they are established too firmly to be uprooted. They (i. e., the words "wilful" and "malicious") are too vague to be often employed in any treatment of the law itself, except by one with no distinct ideas to convey, or wishing to appear learned when he is not. Naturally, therefor, they are frequently

found in statutes." [1 Bishop, Crim. Law, p. 2, sec. 427.]"

Malice when defined as the intentional doing of a wrongful act, has been said to mean not only that the perpetrator intended to do the act, but that he knew it was wrongful when he did it, and that this is the meaning it bears in cases of homicide. Further, that if one intentionally does a wrongful act, knowing at the time it is wrongful, he does it wantonly, that is to say, causelessly, without restraint, in reckless disregard of the rights of others, from an evil spirit and bad motive; since good will or spirit does not impel the commission of wilful wrong. [Trauerman v. Lippincott, 39 Mo. App. loc. cit. 488.] The Supreme Court has said "malice is a condition of the mind, the existence of which is inferred from acts committed or words spoken. It is that condition of the mind which "shows a heart regardless of a social duty and bent on mischief." [State v. Wieners, 68 Mo. loc. cit. 20.] The statute in hand requires the injury to be done wilfully as well as maliciously—willfully is a word generally construed to mean intentionally instead of accidentally. [State v. Ellis, loc. cit. 214.] But occasionally, in the very class of offenses we are dealing with and in others, it carries the idea of evil intent. [1 Bishop, Crim. Law (8 Ed.), sec. 428; 12 Crim. Law Mag., 392; Thomas v. State, 14 Tex. App. 200; Lumber Co. v. Doyle, 71 Conn. loc. cit. 742.] Bishop comments as follows on the general question of malice in cases like this:

"On an indictment for stabbing a mare, the jury found specially that the defendant 'took the mare from his corn field, where she was damaging his growing corn, to a secret part of the country, where he inflicted the wound, with a view to prevent a repetition of the injury,' and it was held that this did not constitute malicious mischief. The judge said that the wrong, to be such, must be 'done in a spirit of wanton malignity,

without provocation or excuse, and under circumstances which bespeak a mind prompt and disposed to the commission of mischief.' Possibly these terms are a little emphatic; but whether so or not, it is doubtless sufficiently settled that one does not commit this offense by a mere wrongful act done for the protection of his own property." [1 Bishop, Crim. Law, par. 2, sec. 996.]

In view of the language of our statutes and of the exposition of the subject in the books, we think the words "wilfully and maliciously" signify that the offense occurs when a domestic quadruped is maimed, beaten or tortured from an evil impulse, springing from a state of mind which renders the perpetrator indifferent to the sufferings of the animal and the wrongful quality of the act; but not springing necessarily from spite toward the owner or the animal itself. On the whole the following cases support this opinion, though they are to be read cautiously and with reference to the laws the various defendants were accused of violating. [State v. Bogardus, 4 Mo. App. 215; State v. Roche, 37 Mo. App. 480; State v. Crenshaw, 22 Mo. 453; State v. Graham, 46 Mo. 490; State v. Landreth, 12 Caro. Law Rep. 329; State v. Avery, 44 N. H. 392; Commonwealth v. Walden, 3 Cush. (Mass.) 558; Id. v. Williams, 110 Mass. 408; Hunt v. State, 3 Ind. App. 383; Duncan v. State, 49 Miss. 331; Stephens v. State, 65 Miss. 329; Grise v. State, 37 Ark. 456; State v. Foote, 71 Conn. 737; Dawson v. State, 52 Ind. 478; Brown v. State, 26 Ohio St. 176; Moseley v. State, 28 Ga. 190; Wright v. State, 30 Ga. 325; Branch v. State, 41 Tex. 622; Lott v. State, 9 Tex. App. 206; Reedy v. State, 22 Tex. App. 271.]

Our next inquiry relates to what evidence is competent in a case like this, as tending to prove the injury to the animal was wilfully and maliciously inflicted. Or, to state the question more aptly as regards the point for decision: Was it competent to prove the

marauding propensity of the hogs and that defendant had proposed various methods to their owner to keep them out of defendant's field, and only killed them to protect his crop after the proposals had been rejected? However unjustifiable the killing may have been, does not this evidence tend to prove the act did not originate in the state of mind which constitutes malice? That on the contrary defendant acted from neither a cruel propensity, or indifference to the suffering of dumb creatures, or an intention to do what he knew was an unlawful deed, but from an impulse of self-defense, namely; to preserve his crop from destruction? Counsel for the State says the only method by which defendant lawfully could protect his crop, was by complying with sections 3295 and 3296 of the statutes, which prescribe what kind of a fence an owner must maintain and how he may be reimbursed for damage done in his fields by marauding stock when he has a lawful fence. Those statutes have another purpose from the one in hand. They were enacted to regulate the rights and duties of owners of land and stock as between themselves; whereas the statute on which the defendant is charged, is designed for the prevention of cruelty to animals. Even if one has a lawful fence he may violate the criminal statute by wilfully and maliciously or cruelly beating or torturing an intruding animal; but whether he has such a fence or not, if he injures an animal in his field, a question must arise, in passing on his criminal liability, concerning the malicious or cruel quality of the deed; for therein consists the offense. Yet the attitude of a defendant with regard to keeping a lawful fence is a circumstance touching the question of malice; as it tends to shed light on the problem of whether his temper and mood were law-abiding or such as would prompt acts of intentional lawlessness. Section 1989 does not say malice must be inferred if the act was wrongfully and intentionally

done, but that it may be, which means that when the State has proved those facts, the court may leave them to the jury as sufficient to support a finding of malice. But this is different from saying the jury are confined to those facts in passing on the question, or that evidence to disprove its existence may not be introduced. Wharton says malice is to be inferred from *all the facts in the case* as a presumption of fact, and is never to be arbitrarily assumed as a presumption of law. [1 Crim. Law (10 Ed.), sec. 122; see, too, Wharton, Crim. Ev., sec. 738, et seq.] For the jury to derive their conclusion solely from the slaughter, might cause them to regard the deed as springing from a wanton, cruel or reckless impulse, when, in truth, the emotion felt by defendant was purely defensive, though it tended toward an unlawful act. As was said in a quite similar case, the question to be tried was not whether the defendant was justified in killing, but whether his motive was malicious; and that on this point the breachy proclivity of the animal and the purpose of the accused to protect his crop, were relevant. [Wright v. State, 30 Ga. 325.] This case is quite in point, it having been held therein that the defendant who was accused of malicious mischief in shooting a mule, might prove he shot it to protect his crop, which the mule was in the habit of foraging on, and not from malice against the animal or its owner. It is true our statute excludes the necessity of proving that variety of malice, but nevertheless general malice must be proved. Therefore the remark of the court that if the defendant shot the mule to protect his crop, the act, though unjustifiable, was not malicious, is apropos. In Reedy v. State, 9 Tex. App. 271, a prosecution for wilfully and wantonly killing a cow, the defendant offered to prove the animal was breachy and in the habit of trespassing on his crops. The evidence was rejected at the trial, but the appellate court said the jury should have heard and con-

sidered it "in determining whether the killing was wil-
fully and wantonly done without excuse, and under cir-
cumstánces evincing a lawless spirit; or whether, under
the circumstances, such facts negatived such motives,
promptings and wantonness." And so in State v.
Avery (loc. cit. 397), in which an indictment for cruelly
beating and wounding a horse was met with the defense
that the beating was solely for the purpose of training,
the court said if this was true, however severe the beat-
ing was, it could not be malicious within the meaning
of the statute. And, again, in Grise v. State, supra,
where the indictment was for needlessly killing a pig
under a statute against needlessly killing animals, it
was said the legality or illegality of the act was not the
point of inquiry, but whether, even if unlawful, it was
needless. In State v. Graham, 46 Mo. 490, the defend-
ant was charged with wilfully killing a hog, the prop-
erty of one Huskey. The prisoner offered to prove his
father-in-law had requested him to go into the woods
where the father-in-law had some wild hogs, and kill
them. Defendant went to the woods and returned say-
ing he had killed Huskey's hog and asking what he
should do with it. The Supreme Court held this evi-
dence should have been received and it was for the jury
to pass on the entire evidence. We incline to the opin-
ion that evidence of the breachy habit of the hogs and
of what had transpired between their owner and de-
fendant prior to the killing, should have been admitted.
The offer to prove that after the hogs were dead, de-
fendant tendered payment for them, could throw no
light on his state of mind when the deed was perpe-
trated. The jury ought to determine the question of
malice, not alone from the wrongful, wilful and inten-
tional character of the killing, but from all relevant
facts, including the previous conduct of defendant with
reference to the depredations of the hogs and as to his
inclosures, and the manner in which the hogs were

killed.   Section 1989 was severely applied in the case of State v. Guernsey, 9 Mo. App. 312; and, it seems, contrary to the principle of the decision in State v. Graham, 46 Mo. supra.   We do not refer to the ruling that Guernsey was rightly denied an instruction for acquittal if he had no malice or ill will against the prosecuting witness; but to the exclusion of evidence tending to show his belief that the fence he cut was not on the land of the said witness but in the public highway.   Perhaps under that ruling the evidence excluded in the present case would be incompetent.   The opinion considered the evidence offered, not with reference to its competency on the issue of malice, but on the issue of the defendant's right to cut the fence.

After excluding the testimony, we are discussing, the trial court commented on it in an instruction to the jury telling them that such conduct on the part of defendant was no defense.   As the evidence was not before the jury, this instruction was improper.   [McKinzie v. Hill, 51 Mo. 303.]

The judgment is reversed and the cause remanded. All concur.