BLANCHE C. BAKER MATTHEWS, APPELLANT, v. ORVILLE R. McVAY AND LUCY E. McVAY, HUSBAND AND WIFE, RESPONDENTS.—234 SW (2) 983.

Springfield Court of Appeals. Opinion delivered December 8, 1950.

*McReynolds, Flanigan & Flanigan, John H. Flanigan, Lawrence H. Flanigan*, Attorneys for Appellant.

*R. A. Esterly,* Attorney for Respondents.

VANDEVENTER, P. J.—From a judgment on a petition for a declaratory judgment, plaintiff appeals.

The petition alleged that plaintiff and defendants were adjoining landowners and that between their respective acreage was a partition fence; that many years ago, plaintiff and defendants, and their pre-

decessors in title, had orally agreed to maintain a definite portion of said fence between their lands, and that the agreement was for plaintiff. to maintain the north 80 rods of the south 90 rods of said division fence and defendants to maintain the remainder, but that defendants understood they were to maintain the north 80 rods and the plaintiff to maintain the south 80 rods.

It was further alleged that the south part of said fence was posts and woven wire, which was sufficient to restrain horses, cattle, sheep and hogs but the northern part of said fence is hedge and is wholly insufficient to turn sheep and hogs, and in many places not sufficient to turn horses and cattle; that it was the duty of each of the parties to maintain their portion of the fence in a condition that would at all times restrain horses, cattle, sheep, goats, hogs and small animals, but that defendants insisted they were only obliged to maintain their portion of the fence so as to restrain horses and cattle; that at times since the parties hereto became adjoining proprietors, animals of plaintiff have trespassed on defendants' land and animals of defendants have trespassed on plaintiff's land and at such times damage resulted. Plaintiff is willing to assume responsibility of maintaining her portion of the fence according to her understanding but because defendants did not agree as to the portion and type of fence each was to maintain, that they were insecure as to their legal relations as adjacent landowners and for that reason plaintiff was petitioning for a declaratory judgment fixing their mutual rights, duties and responsibilities. Plaintiff prayed the court to decide, (a) whether the fence between them, or any part thereof, is an agreed fence subject to the terms and conditions of an oral agreement binding upon them, (b) what were the terms and conditions of the agreement, (c) whether the parties are bound and obligated to maintain their respective portion of said fence in a condition sufficient to turn goats, sheep, hogs and small animals as well as horses and cattle and, (d) if the court finds said division fence is not an agreed fence between the parties, that it so declare so plaintiff may proceed under the statute to have a statutory fence established, and the court was asked to render a judgment "declaratory of all the rights, duties and responsibilities of the plaintiff to the defendants and of the defendants to the plaintiff with reference to the division fence between the parties, and for all proper relief."

In their answer, defendants admitted the ownership of the tracts as described in the petition; that their respective acreages were contiguous and that many years ago there had been an oral agreement relative to the maintenance of certain portions of said partition fence; denied being responsible for the maintenance of any portion of said fence other than the north 80 rods thereof and that their responsibility on that portion was only to maintain a fence sufficient to restrain horses and cattle. Defendants denied that the south half of the fence

was sufficient to turn horses, cattle, sheep and hogs, asserted that the north part was sufficient to turn horses and cattle and stated that neither of them was under a duty to maintain a fence that would restrain sheep, goats, hogs or other small animals. It was further admitted that from time to time animals belonging to plaintiff would cross the fence onto the lands of defendants, causing them damage but denied that defendants' animals had gone through the division fence and caused damage to the plaintiff. It was admitted there was a disagreement between the parties but denied that defendants, or their predecessors, had ever obligated themselves to maintain more than the northern half of the fence and that only to the extent of turning horses and cattle. The prayer asked the court to adjudge and declare that defendants were responsible for the maintenance only of the north 80 rods of said division fence and then only in a manner sufficient to turn horses and cattle "and for such other relief as the court may deem just and proper."

A trial was had without a jury but none of the testimony has been brought up in the transcript, it being contended by appellant that the record proper is all that is necessary for determination of the questions presented.

However, by agreement of the parties, the record contains a stipulation, which states by way of introduction that "in the trial court there was evidence tending to show and contradict the following: * ." This stipulation then recites that at the time of the alleged agreement and for more than 30 years thereafter, the entire half mile of the division fence, except the south 10 rods thereof, consisted of hedge or Osage Orange, with occasional openings, wired with barbed wire but neither end thereof had been sufficient to turn sheep, goats, hogs or other small animals; that about the years 1935 or 1936, plaintiff's predecessor in title removed the hedge, which had become thin, from the south half of the division fence and in its place built a barbed wire fence; that in the year 1939, defendants added four strands of barbed wire to the north half which was hedge fence and that in 1946 or 1947, plaintiff's predecessor in title installed new hog wire on the entire south half of the division fence except for the south ten rods, which had always been unfenced. That at the present time, the north half was of hedge construction with four strands of barbed wire and never had been sufficient to turn sheep, hogs, goats and other small animals, that the south half, except the 10 rods which is unfenced, consists of hog wire strung on posts and that "on occasion" hogs have worked their way under or through this fence; that when either of the adjoining landowners wanted to put hogs or other small animals on that part of his farm adjoining the division fence, such party would make the division fence hog tight adjacent to the area in which the hogs were permitted to run. That the original agreement establishing and dividing the fence had never been modified and that Jasper

County had adopted the Missouri "Stock Law" at the time of the trial of the case.

The case was submitted to the court and he rendered a decree finding that plaintiffs and defendants were the owners of the tracts of land described which were adjoining farms and that the boundary line extended between the farms for one-half mile or 160 rods; that many years ago the division fence became an agreed fence by oral agreement by the then owners of the lands, by the terms of which plaintiff and her predecessors in title were obligated to maintain the south 80 rods and defendants and their predecessors the north 80 rods, "that at the time said agreement was made, there was no agreement as to the type or character of said fence to be maintained;" that for many years and up to the present time, the north 80 rods consisted of a hedge fence which would not turn all manner of cattle and that on the south portion there is a "hog tight" fence. The judgment then stated:

"The court therefore finds, decrees and declares that there is an agreed fence between plaintiff and defendants, and that under said agreement plaintiff is obligated to maintain and be responsible for the south 80 rods of said division fence, and defendants are obligated to maintain and be responsible for the north 80 rods of said division fence; that said fence shall be of such character as to turn horses and cattle; that in the absence of agreement neither party is obligated to maintain a fence that will turn all manner of livestock, including sheep and hogs; that either party has the right to maintain and erect any type of fence either of them may desire, so long as said fence is sufficient to turn horses and cattle; and that each party shall pay the costs incurred by them."

The appellant in his brief states:

"The precise point at issue on this appeal may be boiled down to this question: Where adjacent landowners have by agreement divided their partition fence, each agreeing 'to maintain and be responsible for' a certain part thereof, where said agreement contains no provision 'as to the type or character of fence to be maintained', do the parties perform by maintaining a fence that will turn horses and cattle, but will not turn sheep and hogs?"

It has been held that declaratory judgment actions are of an equitable character, (Connell v. Jersey Realty & Investment Co., 352 Mo. 1122, 180 S. W. (2) 49. Stewart v. Shelton, 201 S. W. (2) 395, 356 Mo. 258. Crollard v. Northern Life Ins. Co. (Mo. App.), 200 S. W. (2) 375) and if so, then it is our duty to decide the case de novo and render such judgment as we think should have been entered by the chancellor. If it is a case at law, (See: Section 1134 Mo. R. S. A. State ex rel. Fire Ins. Co. v. Terte, 176 S. W. (2) 25, 351 Mo. 1089. Roberts v. Murray (Mo. Sup.), 232 S. W. (2) 540) it was tried by

the court without a jury, and should upon review be treated by us in the same manner as if it were a suit of an equitable nature. 847-114 Mo. R. S. A. Cosentino v. Heffelfinger (Mo. Sup.), 229 S. W. (2) 546. Johnson v. Buffalo School Dist. No. 1 of Dallas Co. (Mo. Sup.), 231 S. W. (2) 693. In either event, our responsibility is the same, giving due deference to the judgment of the trial court, who observed and heard the witnesses as they testified.

Other than the stipulation above referred to, we do not know what evidence was presented to the trial court. The transcript recites that there is no dispute as to the facts found by the court. However, the stipulation states that there was evidence pro and con on all facts stipulated.

Appellant strenuously asserts that if the oral agreement did not specify what animals were to be restrained by the division fence, then it must be such as would restrain all animals, including goats, sheep, and hogs; that the statute which defines and describes lawful fences applies to outside fences only and does not apply here because this is an "agreed fence" and its maintenance depends entirely upon the terms of the agreement. That if the parties merely agreed upon a fence and the portion each was to maintain, and was silent as to type or character, that the common law would apply and it must be such a fence as would restrain any domestic animals, because at common law no one was required to fence his premises, but the owners of stock were required to restrain them. Growney v. Wabash Ry. Co., 102 Mo. App. 442, 76 S. W. 671.

This alleged oral agreement was entered into so long ago that as far as the record before us shows, neither party dared specify its age or its provisions, if any, as to the type or character of fence to be maintained. We do know, however, from the stipulation that there was evidence that for more than 30 years, after the agreement was entered into, and before 1935, the adjoining landowners had between them a hedge fence that would not turn sheep, goats and hogs; that in 1935, the south hedge fence was not as thick or good as the north half and was therefore removed by plaintiff's predecessors and replaced with a barbed wire fence; that in 1939, defendants added four strands of barbed wire to the hedge fence on the north 80 rods and that in 1946 or 1947, plaintiff's predecessors, for the first time, installed hog wire on the entire south half of the fence except the south 10 rods. That the north 80 rods is not now and never has been sufficient to turn sheep, goats and hogs but apparently the south portion of the fence, since 1946 or 1947 and at the time of the trial, was hog proof, except occasionally a hog would work his way under or through it. Furthermore, during all of this period when either of the adjoining landowners wanted to put hogs on that portion of his farm adjoining this division fence, such party would make that part of the division fence that was adjacent to the area in which the hogs were permitted to

run, hog tight. The original oral contract which must have been entered into at least 45 years ago had never been modified.

One of the cardinal principles in construing a contract that is ambiguous is to consider the interpretation that the parties by their conduct placed upon it. It would seem strange, indeed, if from the beginning an "all animal" fence were to be maintained, that neither party for almost 45 years insisted upon it being done. Strange too, that when either of the adjoining landowners desired to impound hogs on the lands adjacent to the partition fence, he would voluntarily make it "hog-tight", if the obligation had always been that the entire fence should be that way. Apparently it was only when the hedge fence on the south portion of the line became thinner than that on the north, that the plaintiff or his predecessor ever thought of changing it. Then he did not build a hog tight fence, he merely pulled the hedge and strung barbed wire. In 1946 or 1947, plaintiff's predecessor in title, for the first time, put in hog wire. If plaintiff's and her predecessor's interpretation of the contract as shown by their acts, means anything, not to say anything of that interpretation placed upon it by defendants, the original understanding must have been that a fence that would only restrain horses and cattle was all that was required. The trial court took that view and it had before it not only oral evidence but the stipulation that we have referred to.

Rights and obligations under partition or division fences originate in four ways, by statute, under the common law, by prescription or by agreement between the adjoining landowners. Where a partition or division fence is created by prescription or by agreement, neither the statute nor common law rules apply, unless, of course, they are adopted as part of the agreement. Hopkins v. Ott, 57 Mo. App. 292. Jones v. Habberman, 94 Mo. App. 1. 67 S. W. 716. Kneale v. Price, 29 Mo. App. 227. Growney v. Wabash Ry. Co., 102 Mo. App. 442, 76 S. W. 671. D'Arcy v. Miller, 86 Ill. 102. 22 Am. Juris. Fences, Sec. 14. Carey v. Schweitzer, 134 A. 52, 3 W. W. Harr Del. 211. O'Riley v. Diss, 41 Mo. App. 184.

In this last case the court said:

"If parties desire to avoid the common law duty in cases of adjoining fields, they may do so by establishing a division fence either under the statute or by agreement."

Where it is established by agreement, you must look there to ascertain the kind of fence and the portions each must maintain. Collins v. Cochran, 49 S. E. 771, 121 Ga. 785. Kneale v. Price, 29 Mo. App. 227. Hopkins v. Ott, 57 Mo. App. 292. 36 C. J. S. Fences, Secs. 7 and 10. McLean v. Berkabile, 123 Mo. App. 647. 100 S. W. 1109.

It has been held that Secs. 14569 and 14570, Mo. R. S. A. apply to outside fences. O'Riley v. Diss, 41 Mo. App. 184. Jackson v. Fulton, 87 Mo. App. 228. Jones v. Habberman, 94 Mo. App. 1, 67 S. W. 716. State v. Prater, 130 Mo. App. 348, 109 S. W. 1047.

Appellant insists that the case of Field v. Bogie, 72 Mo. App. 185, "is absolutely decisive of this case." In that case, the lands were separated by a division fence "which the parties, by agreement, had divided into two parts, each undertaking to maintain and keep in repair his respective portion." Nothing is said in the opinion as to the character of fence to be maintained, but it is stated, "This controversy is, in every substantial particular, like that of Hopkins v. Ott, 57 Mo. App. 292." In that case each party agreed to keep and maintain "in proper repair (so as to prevent hogs and other animals passing through the same), a definite part of said fence, * *." So if the facts in the Field case are like those in the Hopkins case, there was an agreement to maintain a fence that would restrain hogs. We take judicial notice of the laws of Missouri which include opinions of appellate courts, and it is permissible to examine the record resulting in an opinion, to ascertain the grounds upon which the opinion is based. Atlantic Fruit Co. v. Red Cross Line, 5 Fed. (2) 219. We have taken advantage of this privilege and that record shows that in Field v. Bogie, it was admitted at the trial that the fence to be maintained was a "statutory partition fence" which under the then statutes (Secs. 5032, 5033, 5037 and 5042, R. S. Mo. 1889) must be such as "to resist horses, cattle, swine and live stock." It was stipulated that at the time of the trial (March, 1950) Jasper County had adopted the "Stock Law" but whether it was in effect at the time of the agreement or for many years thereafter, we do not know. Therefore, Field v. Bogie is not applicable to the facts in this case.

Appellant urges that the judgment is inconsistent with that portion of the finding of facts where the court said, "that at the time said agreement was made, there was no agreement as to the type or character of said fence to be maintained." The portion of the judgment complained about is "that said fence shall be of such character as to turn horses and cattle; that in the absence of agreement, neither party is obligated to maintain a fence that will turn all manner of livestock, including sheep and hogs." It seems from an examination of the pleadings that there is only one material point in dispute between the parties and that is as to the character of fence to be maintained. Plaintiff contends it must be a fence sufficient to restrain all domestic animals. Defendants contend that it is sufficient if it restrains horses and cattle. Both parties plead that many years ago, there was an agreement to erect and maintain a partition fence between their respective tracts of land. We do not know the details of the agreement, if any, relative to the character of the fence but we do know there was evidence that for more than 30 years it was all a hedge fence, that for an additional 11 or 12 years, the south half was a barbed wire fence, the north half remaining hedge, and that neither would restrain goats, sheep, swine or other small animals. Not until 1946 or 1947, was any portion of it made sufficient to restrain all domestic animals. It would

seem therefore, there being no proof that a definite kind of fence was agreed upon at the time the contract was made, that the type and character of the fence to be maintained was established by the subsequent conduct and compliance of the parties and their predecessors.

Their acquiescence for more than 40 years would indicate that a fence to restrain cattle and horses was their own interpretation of the nature and extent of their obligations. As stated, where a contract is ambiguous, the interpretation that the parties, themselves, have put upon it has great weight and in the absence of anything to the contrary will be controlling. Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S. W. (2) 360. Brockett v. Natural Set-Up Sales Corp. (Mo. App.), 227 S. W. (2) 514. Swift v. Kansas City Life Ins. Co., 184 S. W. (2) 184, 239 Mo. App. 125.

It is our opinion, therefore, that many years ago a partition fence was, by oral agreement, established between these respective acreages by predecessors in title to the parties here; that defendants are, and their predecessors were, to maintain the north 80 rods and the plaintiff was, and her predecessors were, to maintain the remainder of the partition fence; that the evidence does not show a specific agreement as to the character of fence to be maintained, but that for more than 30 years all of it was of hedge, capable of restraining only horses and cattle and that for 11 years more, the north half was of hedge and the south half of barbed wire capable of restraining only horses and cattle and from the year 1946 or 1947 to the date of the trial, the south half was of hog wire sufficient to restrain all manner of domestic animals while the north half was still of hedge, capable of restraining only horses and cattle; that while the creation of the fence was by oral agreement, the character of the fence was created by prescription or user. Knox v. Tucker, 48 Me. 373. Rust v. Low et al., 6 Mass. 90. Castner v. Riegel, 24 A. 484, 54 N. J. 498. Collins v. Cochran, 49 S. E. 771, 121 Ga. 785. 36 C. J., Fences, Sec. 6, 22 Am. Jur. Fences Sec. 18. A long and continuous acquiescence and user raises the presumption of an agreement. The interpretation placed upon the oral contract by the plaintiff and her predecessors, by their long, continued acquiescence and user was that the partition fence should be capable only of restraining horses and cattle. This is accentuated by the fact that there was evidence at the trial that when either of the adjoining landowners kept hogs on that portion of the farm adjoining the division fence, he reinforced it so that it would be hog tight adjacent to the place where the hogs were permitted to run. This action on their part is inconsistent with an understanding that an ''all animal'' fence was to be maintained.

While, as stated, the oral evidence is not before us, the allegations of the petition and the stipulation as to facts proved at the trial justify this conclusion. The judgment of the trial court should be affirmed. It is so ordered. *Blair* and *McDowell, JJ.,* concur.